**HAPPY INDUSTRIAL CORPORATION,**
Appellant,

v.

**AMERICAN SPECIALTIES, INC.;**
Texmac, Inc., Appellees.

No. 13–97–531–CV.

Court of Appeals of Texas,
Corpus Christi.

Dec. 10, 1998.

Gordon M. Shapiro, James M. McCown, Jackson & Walker, L.L.P., Dallas, for appellant.

Fred Shannon, Charles Estee, Shannon, Drake & Estee, San Antonio, J. Benjamin Barlow, Barlow & Garsek, P.C., Fort Worth, Bradley S. Wilder, Ball & Weed, San Antonio, for appellants.

Before Chief Justice SEERDEN, and Justices DORSEY and CHAVEZ.

## OPINION

Justice DORSEY.

This is an appeal from the trial court's denial of a special appearance to contest the personal jurisdiction over appellant, Happy Industrial Corporation, a Japanese corporation. The underlying suit involved a dispute between Happy and the appellee, American Specialties, Inc. (ASI), over ASI's purchase of two new commercial embroidery machines manufactured by Happy. The machines were sold to ASI by Data–Stitch, Inc., who received the machines from Texmac, Inc. By two points of error Happy asserts the trial court erred in holding it was subject to personal jurisdiction in Texas, and it challenges the legal and factual sufficiency of the evidence to support an implied finding that Texmac or Data–Stitch were its agents. We reverse and dismiss the suit for want of personal jurisdiction.

Happy is a foreign corporation organized and established under Japanese law. Its corporate residence and principal place of business are in Japan. It manufactures commercial embroidery machines.

ASI, a Texas corporation, manufactures and sells specialty advertising items, including T-shirts, jackets, and caps that have embroidered logos. ASI uses commercial embroidery machines to produce these items.

In 1992, Chalmers Mitchell, ASI's president, attended a trade show in Dallas, Texas. Data–Stitch was there displaying embroidery machines manufactured by Happy. "Shawn," a Data–Stitch representative, gave Chalmers information about Happy's embroidery machines. To the best of Chalmers' recollection Data–Stitch made a brochure available to him at the trade show. The brochure described an embroidery machine manufactured by Happy and listed Data–Stitch as an agent.

About February 1993, ASI received a proposal from Data–Stitch to sell it an embroidery machine manufactured by Happy. Over the next several months Chalmers had discussions with Shawn, the Data–Stitch sales representative, during which it was represented that Data–Stitch was Happy's authorized agent, and Happy machines were imported into the United States through Texmac. Chalmers was told ASI had to deal with Data–Stitch as the exclusive Happy representative in the Texas region. During this time and thereafter Chalmers and Chris Mitchell, ASI's vice-president, saw Happy advertisements in trade journals distributed in Texas, identifying Texmac and Data–Stitch as Happy's authorized representatives. One of these journals, *Stitches Magazine*, was delivered to ASI in Texas and had advertisements similar to those they had seen near the time of purchase.

ASI bought two commercial embroidery machines from Data–Stitch and paid about $100,000 for each machine. Happy manufactured both of these machines, and Data–Stitch installed them in ASI's facilities in San Antonio. After installation of the machines Chalmers and Chris Mitchell had personal contact with representatives of Data–Stitch and Texmac concerning problems with the machines. During those discussions it was represented to Chalmers and Chris that Data–Stitch and Texmac were the agents for Happy and were following up with Happy concerning the problems ASI and other buyers were experiencing with the machines. They were advised that a number of machines manufactured by Happy had been sold in Texas and other states.

On August 30, 1996, ASI sued Happy, Data–Stitch, and Texmac for violations of the DTPA, breach of warranty, fraud, or in the alternative, negligent misrepresentation. ASI alleged that from the outset the machines had repeatedly broken down and interrupted production.

On November 12, 1996, Happy filed a special appearance, under Rule 120(a) of the Texas Rules of Civil Procedure, objecting to personal jurisdiction in Texas. At the hearing on the special appearance neither party offered live testimony. ASI's evidence included the affidavits of Chris and Chalmers Mitchell along with several attached exhibits. Happy's only evidence included the affidavit of Tadaki Harada, its director and general manager. After hearing argument the trial court, on July 21, 1997, signed an order denying Happy's special appearance. Happy appeals from this order.

■ The trial court did not make findings of fact or conclusions of law relating to Happy's special appearance. Therefore we must imply all necessary findings of fact in support of the trial court's ruling, and we will affirm if the judgment can be upheld on any legal theory supported by the evidence. *Nikolai v. Strate*, 922 S.W.2d 229, 240 (Tex.App.— Fort Worth 1996, writ denied) (citing *Clark v. Noyes*, 871 S.W.2d 508, 511–12 (Tex. App.—Dallas 1994, no writ)). *See Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex.1987).

### Standard of Review

■ The existence of personal jurisdiction is a question of law, but proper exercise of that jurisdiction must sometimes be preceded by the resolution of underlying factual disputes. The standard of review to determine the appropriateness of the trial court's resolution of those facts is an ordinary sufficiency of the evidence review. *Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 411 (Tex.App.—Houston [14th Dist.] 1997, no writ); *Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 632 (Tex. App.—Dallas 1993, writ denied). The scope of that review includes all evidence in the record. *Puri v. Mansukhani*, 973 S.W.2d 701, 708 (Tex.App.—Houston [14th Dist.]

1998, no writ); *Conner*, 944 S.W.2d at 411; *Vosko v. Chase Manhattan Bank*, 909 S.W.2d 95, 99 (Tex.App.—Houston [14th Dist.] 1995, writ denied). If a special appearance is based on undisputed or otherwise established facts an appellate court shall conduct a de novo review of the trial court's order granting a special appearance. *Conner*, 944 S.W.2d at 411. In *Guardian Royal Exchange Assurance, Ltd., v. English China Clays, P.L.C.*, 815 S.W.2d 223 (Tex.1991), the court stated, "[i]n applying the jurisdictional formula to a particular case, the facts must be carefully weighed and mechanical application of any test, including the Texas formula, must be avoided." *Guardian Royal*, 815 S.W.2d at 231 (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 358 (Tex.1990) and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

■ A court may assert personal jurisdiction over a nonresident defendant only if the requirements of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and the Texas long-arm statute are satisfied. *CSR, Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997); *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The Texas long-arm statute allows a court to exercise personal jurisdiction over a nonresident defendant that does business in Texas. In addition to a discrete list of activities that constitute doing business in Texas the statute provides "other acts" by the nonresident can satisfy the requirement. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997); *Guardian Royal*, 815 S.W.2d at 226. The Texas Supreme Court has repeatedly interpreted this broad statutory language " 'to reach as far as the federal constitutional requirements of due process will allow.' " *CSR*, 925 S.W.2d at 594 (quoting *Guardian Royal*, 815 S.W.2d at 226); *see also U–Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977). Thus the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *CSR*, 925 S.W.2d at 594. *See Guardian Royal*, 815 S.W.2d at 226.

■ The United States Constitution permits "a state court [to] take personal jurisdiction over a defendant only if it has some minimum, purposeful contacts with the state, and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice." *Dawson–Austin v. Austin*, 968 S.W.2d 319, 326 (Tex.1998); *CMMC v. Salinas*, 929 S.W.2d 435, 437 (Tex.1996). A nonresident defendant that has purposefully availed itself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction. *CSR*, 925 S.W.2d at 594. *See Burger King*, 471 U.S. at 475–76, 105 S.Ct. 2174. A defendant should not be subject to the jurisdiction of a foreign court based upon "random," "fortuitous," or "attenuated" contacts. *CSR*, 925 S.W.2d at 595 (quoting *Burger King*, 471 U.S. at 475–76, 105 S.Ct. 2174). Minimum contacts are particularly important when the defendant is from a different country because of the unique and onerous burden placed on a party called upon to defend a suit in a foreign legal system. *CSR*, 925 S.W.2d at 595.

■ A defendant's contacts with a forum can give rise to either general or specific jurisdiction. General jurisdiction is present when a defendant's contacts are continuous and systematic, allowing the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *CSR*, 925 S.W.2d at 595. *See Schlobohm*, 784 S.W.2d at 357. General jurisdiction requires a showing the defendant conducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction. *CSR*, 925 S.W.2d at 595. *See Guardian Royal*, 815 S.W.2d at 228. On the other hand specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum. *CSR*, 925 S.W.2d at 595. *See Guardian Royal*, 815 S.W.2d at 227. It is not sufficient to establish jurisdiction that a foreign manufacturer released its product into the stream of commerce and the product came to rest in Texas. Rather, the manufacturer must take some action purposely directed at the forum

state so as to allow it to foresee being haled into court there. *CMMC*, 929 S.W.2d at 439.

■ By point one Happy asserts the trial court erred in denying its special appearance and holding that it was subject to personal jurisdiction in Texas.

Happy's special appearance evidence included the affidavit of Tadaki Harada. Harada served as Happy's director and general manager and was responsible for Happy's manufacture and sale of industrial embroidery machines. Harada stated Happy first sold industrial embroidery machines to Itochu Texmac, Japan (Itochu) in 1991. Itochu is a Japanese company with its principal place of business in Osaka, Japan. No agency relationship existed between Itochu and Happy. When Itochu sent Happy a purchase order for an industrial embroidery machine Happy manufactured the machines and shipped them directly to Itochu at warehouses in Japan designated by Itochu. Happy did not have any participation, control, or input regarding the ultimate delivery location of the embroidery machines bought by Itochu. Once Happy sold its industrial embroidery machines to Itochu it had no right of control over their distribution. Happy had no responsibility for the distribution, marketing, advertising, or servicing of the machines to any third party purchaser from Itochu, and Happy did not create or control Itochu's chain of distribution. Happy did not sell or warrant any of its industrial embroidery machines to Texmac (not Texmac Itochu), nor did it at any time service or agree to service any industrial embroidery machines for Texmac. Happy does not have, nor has it ever had, any agency or business relationship with Texmac. Happy has never permanently assigned any employees or directors to work in Texas, and Happy has never employed any workers, sales persons, agents, or servants while they resided in Texas. Happy had not transacted any business or contracted to supply services or goods in Texas, directly or indirectly, through any agent, or by mail, telephone, telegraph, or any means of communications. All sales of Happy's industrial embroidery machines have been to buyers outside the United States with whom Happy has no

agency relationship and over whom Happy exercised no control.

In his affidavit Harada denied Happy had any contacts with Texas. He stated Happy had never registered to do business in Texas, had never done business in Texas, did not have a registered agent for service of process in Texas, had never been authorized to transact business in Texas, had never paid franchise taxes in Texas, and had never maintained any business records in Texas. Happy did not have and has never had a telephone or telex number in Texas. Happy did not have, nor had it ever maintained, any offices, businesses, or business enterprises in Texas. Happy had never owned a subsidiary or issued a franchise in Texas, had never permanently assigned any employees or directors to work in Texas, and had never employed any workers, sales persons, agents, or servants while they resided in Texas. Happy had never owned any real or personal property in Texas, paid any taxes in Texas, maintained or held any interest in any insurance policy, pension fund, annuity account, stock portfolio or bond issue located in Texas, or deposited any funds in any financial institution located in Texas. Happy had no bank account in Texas, had never applied for a loan in Texas, and had never acted as a guarantor or surety of a financial obligation in Texas. Happy had not transacted any business or contracted to supply services or goods in Texas, directly or indirectly, through any agent or by mail, telephone, or telegraph or any other means of communication nor had it ever directly negotiated to sell any goods or service any goods in Texas. Happy had not bought any goods from businesses with addresses in Texas and did not have any customers in Texas. Happy had not directly advertised its industrial embroidery machines in the United States, and it did not directly market its products in Texas. Happy had not held any trade shows in Texas, nor had it established any channels for providing advice to those who may own its industrial embroidery machines. All sales of its industrial embroidery machines had been to purchasers outside the United States with whom it had no agency relationship. Happy had not entered into any contracts in Texas, had never initiated litigation in Texas,

had never committed a tort in Texas, had never routinely conducted any part of its general business activities in Texas, had never done any business in Texas on a continuous or systematic basis, and had never had any continuous or systematic contacts with Texas.

It is undisputed that ASI bought two commercial embroidery machines in Texas, Happy manufactured these machines, and the machines were installed in ASI's San Antonio facilities. These activities standing alone do not support personal jurisdiction over Happy. The jurisdictional facts in our case are less than those in *CSR* and *CMMC, supra.*

In *CMMC* Hill Country Cellars, a Texas winery, ordered a winepress from KLR, a New York company. KLR in turn ordered the press from CMMC, a French company. KLR told CMMC to wire the press for use in the United States, arrange to transport the press from CMMC's French factory to the ship on which it would travel to the United States, and arrange for the press' shipment F.O.B. Houston. CMMC complied, and Hill Country took title to the press in Houston. After Hill Country began to use the press Ambrocio Salinas, a Hill Country employee, injured himself while cleaning the press and sued CMMC. The trial court sustained CMMC's special appearance and dismissed the case for want of personal jurisdiction. The court of appeals reversed. On appeal to the Texas Supreme Court Salinas argued CMMC's release of its winepress into the stream of commerce with knowledge of the intended destination was sufficient to subject it to personal jurisdiction. The supreme court noted CMMC's only contacts with Texas were that it made isolated sales of equipment to customers in Texas, and that it knew the machine it sold KLR was being shipped to Texas. The court stated:

> The "substantial connection" between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State. The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Addi-

tional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*CMMC,* 929 S.W.2d at 438 (citing *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 110–12, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

The supreme court noted CMMC's wine-producing equipment did not regularly find its way to Texas. Neither CMMC nor KLR made any effort to market CMMC's equipment in Texas, other than by advertisements in magazines with national circulation. Hill Country's purchase was an isolated event. KLR did not contact Hill Country; Hill Country contacted KLR. Hill Country never had any contacts at all with CMMC. CMMC's mere knowledge its press was for purchase and use in Texas and its wiring the machine for use in the United States were not sufficient to subject CMMC to the jurisdiction of Texas courts. This evidence simply did not show that CMMC designed products for use in Texas, or that it made any effort to market them here, or that it took any other action to purposely avail itself of this market. There was no flow of products from CMMC to Texas. The supreme court further stated:

> Still, that act must be purposefully directed at the forum state so that the defendant could foresee being haled into court there. [citations omitted] Single or even occasional acts are not sufficient to support jurisdiction if, as here, " 'their nature and quality and the circumstances of their commission' create only an 'attenuated' affiliation with the forum". [citations omitted] It is neither unfair nor unjust to require Salinas to litigate his disputes with

CMMC at CMMC's place of business when neither he nor his employer ever had any contact whatever with CMMC in Texas. A manufacturer cannot fairly be expected to litigate in every part of the world where its products may end up; its contacts with the forum must be more purposeful before it can constitutionally be subjected to personal jurisdiction....

*CMMC*, 929 S.W.2d at 440. The supreme court reversed the court of appeals' judgment and affirmed the judgment of the trial court dismissing CMMC.

In *CSR* the facts showed CSR was a corporation organized under Australian law with its principal place of business in Sydney, Australia. It was the sales' agent for asbestos mined by a subsidiary. Johns–Manville Corporation bought asbestos and resold it in the United States. It was the only company marketing CSR's asbestos in the United States. In 1957, CSR sold 363 tons of asbestos to Johns–Manville. It sold the asbestos to Johns–Manville F.O.B. Fremantle, Australia, so that title to the asbestos passed to Johns–Manville when Johns–Manville loaded the fiber onto the ship in Australia. Johns–Manville shipped the asbestos to Houston, and it was used for the manufacture of pipe. The plaintiffs in the underlying suit alleged they were injured by exposure to CSR asbestos used to manufacture pipe. CSR filed a special appearance, asserting the trial court lacked personal jurisdiction over the company. The trial court overruled the motion. CSR sought mandamus relief in the supreme court to prevent the trial court from asserting personal jurisdiction over it. On appeal to the supreme court the plaintiffs argued Texas courts should have personal jurisdiction over CSR because it knew one of Johns–Manville's plants was in Texas, and it could have foreseen its asbestos would be used in Texas.

The supreme court noted CSR was an Australian company headquartered in Sydney. It had no offices in Texas, no employees in Texas, and no bank accounts in Texas. It had not solicited business in Texas and had not sent any correspondence to Texas. It had never owned property in Texas, had never paid taxes in Texas, and had never entered into a contract in Texas. Under these facts the court said CSR did not have systematic and continuous contacts with Texas sufficient to support general jurisdiction. *CSR*, 925 S.W.2d at 595. Concerning specific jurisdiction the court stated:

> It is undisputed that CSR sold Johns–Manville a shipment of 363 tons of raw asbestos that was sent directly to Houston in August of 1957. But title to the asbestos passed to Johns–Manville in Australia and there is no evidence that CSR controlled or participated in the decision to ship the fiber to Texas.
>
> Although foreseeability is a factor to consider in a minimum contacts analysis, foreseeability alone will not support personal jurisdiction. [citation omitted] The defendant must take an action "purposefully directed toward the forum state" to be subject to the jurisdiction of its courts. [citation omitted] Assuming that CSR could have known that the raw asbestos it sold to Johns–Manville might be distributed in Texas, "a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." [citation omitted].... There must be some indication that CSR intended to serve the Texas market.

*CSR*, 925 S.W.2d at 595.

In the instant case Happy's contacts with Texas arose from ASI's purchase of two commercial embroidery machines. Although Happy manufactured the machines ASI bought them from Data–Stitch who in turn received them from Texmac. Happy had no agency relationship or other affiliation with either company. The Mitchells' affidavits refer to sales of other Happy embroidery machines in Texas and other states, but there is no evidence to show how those alleged machines reached Texas due to any purposefully directed activities of Happy or any other link with the business entity. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Moore v. Elektro–Mobil Technik GmbH*, 874 S.W.2d 324, 329–30 (Tex.App.—El Paso 1994,

writ denied). Of particular note is ASI's failure to show any nexus between its acquisition of the two commercial embroidery machines and any act or consummation of a transaction by Happy in Texas. *See Schlobohm*, 784 S.W.2d at 358.

In Texas a nonresident defendant must negate all bases of personal jurisdiction to prevail in a special appearance. *CSR*, 925 S.W.2d at 596. Happy has shown that it had no systematic and continuous contacts with Texas, that it did not purposefully direct any act toward Texas, and that it took no act within Texas that gave rise to ASI's cause of action. *See CMMC*, 929 S.W.2d at 440; *CSR*, 925 S.W.2d at 596. We therefore conclude Happy has carried its burden to negate all bases of personal jurisdiction. We sustain point one.

By point two Happy asserts there is no evidence, or in the alternative, insufficient evidence to support an implied finding that Texmac and/or Data–Stitch are its agents. ASI argues the trial court properly took jurisdiction over Happy because Happy had a distributor/agent in Texas, and Happy did not offer evidence to dispute that Data–Stitch was its agent.

ASI's evidence included the affidavits of Chris and Chalmers Mitchell and several exhibits. In their affidavits the Mitchells stated they had discussions with representatives of Data–Stitch and Texmac. During these discussions it was represented to them that Data–Stitch and Texmac were Happy's agents.

The exhibits included several brochures and magazine ads showing and discussing Happy's embroidery machines, two installation check lists relating to the embroidery machines bought by ASI, two fax messages from Texmac addressed to all Happy agents, and other documentation. Many of these exhibits list the names and addresses of Texmac and/or Data–Stitch, and most of these exhibits list these companies as either agents or distributors for Happy or its machines. Happy filed with the trial court written objections to ASI's evidence, asserting the affidavits contained inadmissible hearsay and conclusory statements. Happy also objected to certain exhibits on the grounds they contained hearsay and were not properly authenticated. The trial court overruled the objections.

Considering all of the evidence before the trial court during the special appearance hearing, there is nothing showing an agency relationship between Happy as principal and Data–Stitch and/or Texmac as agents.

Agency is the consensual relationship between two parties when one, the agent, acts on behalf of the other, the principal, and is subject to the principal's control. *Schultz v. Rural/Metro Corp.*, 956 S.W.2d 757, 760 (Tex.App.—Houston [14th Dist.] 1997, no writ); *see Lone Star Partners v. NationsBank Corp.*, 893 S.W.2d 593, 599 (Tex.App.—Texarkana 1994, writ denied). Agency will not be presumed. *Schultz*, 956 S.W.2d at 760. To prove agency, evidence must establish that the principal has both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task. *Johnson v. Owens*, 629 S.W.2d 873, 875 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.) (citing *New Terminal Warehouse Corp. v. Wilson*, 589 S.W.2d 465, 468 (Tex. Civ.App.—Houston [14th Dist.] 1979), *writ ref'd n.r.e. per curiam*, 605 S.W.2d 855 (Tex. 1980)). It is the principal's extent of control over the details of accomplishing the assigned task that primarily distinguishes the status of independent contractor from that of agent. *McDuff v. Chambers*, 895 S.W.2d 492, 497 (Tex.App.—Waco 1995, writ denied). A question of agency is generally one of fact, and one may be an independent contractor under some circumstances yet may be an agent or employee in connection with other work or activities. *Jorgensen v. Stuart Place Water Supply Corp.*, 676 S.W.2d 191, 194 (Tex.App.—Corpus Christi 1984, no writ).

In the instant case ASI's evidence does not show that either Data–Stitch or Texmac were acting on Happy's behalf or that they were subject to Happy's control. The evidence does not show Happy had the right to assign tasks to either Data–Stitch or Texmac and to control the means and details of the process by which Data–Stitch or Texmac would accomplish any tasks. The evidence contains

no contract of employment, no description of control by Happy of either Data–Stitch's or Texmac's work, and no explanation of the manner in which Texmac or Data–Stitch were paid.

After considering all the evidence we hold there is no evidence of a consensual agency relationship between Happy as principal and either Texmac or Data–Stitch as agents. We sustain point two.

We REVERSE the trial court's order denying Happy Industrial Corporation's special appearance and DISMISS this suit for lack of personal jurisdiction.