00-00076 Case v Grammar.wpd



No. 04-00-00076-CV



Gary A. CASE, et al.,


Appellants



v.



Brenda GRAMMAR, et al.,


Appellees



From the 57th Judicial District Court, Bexar County, Texas


Trial Court No. 1999-CI-02217


Honorable Janet Littlejohn, Judge Presiding



Opinion by: Karen Angelini, Justice


Sitting: Tom Rickhoff, Justice 

 Alma L. López, Justice

 Karen Angelini, Justice


Delivered and Filed: August 23, 2000


REVERSED AND RENDERED


 In this interlocutory appeal, appellants Gary A. Case, Gary A. Case, A Professional
Corporation, IBT International, Inc., Southern California Sunbelt Developers, Inc., and Dan W. Baer
("appellants") appeal the denial of their special appearances. In a single issue, the appellants contend
that the trial court erred in overruling their objections to jurisdiction and determining either that the
appellants had sufficient minimum contacts with Texas to support specific in personam jurisdiction
or that the appellants waived their objections to jurisdiction by participating in pre-trial discovery.
We reverse the trial court's order and render judgment that Texas courts lack jurisdiction over Gary
A. Case, Gary A. Case, A Professional Corporation, IBT International, Inc., Southern California
Sunbelt Developers, Inc., and Dan W. Baer for purposes of this litigation.

Factual and Procedural Background


 The plaintiffs/appellees in this case include Brenda Grammar, Daralyn Grammar, Gregory
Grammar, G.G.D.G., L.P., Lemonleaf, L.P., Pear Tree, L.P., Peach Blossom, L.P., Cherry Blossom,
L.P., Orange Blossom, L.P., Jaguar-Piaget, L.P., Colchester Financial, L.P., Animated Heirlooms,
L.P., Gage Art, Inc., Banyan, L.P., Dinvest, L.P., Rancho Verde, L.P., Apple Orchard, L.P., D&B
Karnes, L.P., Lemon Grove, L.P., and DBG Leasing L.P ("plaintiffs"). These plaintiffs sued
numerous defendants, including the appellants, for their roles in an alleged scheme to defraud the
plaintiffs and steal millions of dollars from them. The alleged scheme was apparently masterminded
by David Tedder. Tedder is a defendant in the lawsuit but is not a party to this appeal. According
to the plaintiffs, however, Tedder is essential to an understanding of the appellants' involvement in
this case. 

 Appellants Dan Baer and Gary Case live and work in the State of California. Baer owns and
operates two businesses, appellants IBT International, Inc., (IBT) and Southern California Sunbelt
Developers, Inc.(SCSD). Case is a Certified Public Accountant, who does business as appellant Gary
A. Case, a Professional Corporation. Case has also served as the controller for IBT. Both Baer and
Case have been closely acquainted with David Tedder. Baer met Tedder, a lawyer, in 1984 when
he retained Tedder's legal services. Baer and Tedder began officing in the same building in 1986,
and Case set up his office in the same building shortly thereafter. At one time, Tedder was president
of IBT.

 Shortly after he became acquainted with Baer, Tedder became involved in the business of
estate planning and asset protection. He conducted seminars through an entity known as the Legal
Forum. Through this practice, Tedder apparently became acquainted with the Grammar family,
several of whom live in Texas. As part of an asset protection plan, Tedder assisted the Grammars
in funding numerous limited partnerships. The Grammars forwarded money to Tedder, who used
the money to fund the limited partnerships. The limited partnership funds were then used to advance
loans to various companies and individuals.

 In the early 1990s, IBT and SCSD borrowed in excess of one million dollars from three of
the Grammar limited partnerships, Banyan, L.P., Pear Tree, L.P., and Orange Blossom, L.P.
Banyan, Pear Tree, and Orange Blossom are all Nevada limited partnerships. According to Dan Baer,
these loans were arranged by Tedder. IBT and SCSD received the funds via check or wire transfer
from one California bank to another. Baer never had any contact with any member of the Grammar
family with regard to these loans until he was contacted by Don Grammar, who demanded payment.
At the time the loans were made, Baer claims to have had no knowledge that the Grammars had any
interest in either Banyan, Pear Tree, or Orange Blossom. 

 Gary Case acknowledges that he has met members of the Grammar family. Tedder referred
Don, Daralyn, and Greg Grammar to Case for preparation of individual tax returns. Case was also
hired by Tedder to prepare the tax returns for several of the Grammar limited partnerships, including
Banyan, Pear Tree, and Orange Blossom. Accordingly, Case was aware of the Grammars'
involvement in the partnerships. 

 The parties acknowledge that none of the appellants had any dealings with the plaintiffs
in this case, other than what is described above. Based upon those dealings, the plaintiffs sued the
appellants, alleging that they had committed, in concert with Tedder and the other named defendants,
breach of fiduciary duty, fraud, and conspiracy to commit theft. The appellants filed special
appearances objecting to in personam jurisdiction in Texas. The trial court conducted a hearing at
which Baer, Case, and a representative of the Grammar family testified.

 The gist of the appellants' argument to the trial court was that they are California residents
and domiciliaries, they conduct no business in Texas, nor do they otherwise have contact with the
State of Texas. They argued that their connection to the present suit is based solely on the fact that
they, as California residents, borrowed or participated in the borrowing of money from three Nevada
limited partnerships. The transactions at issue occurred in California with the assistance of
California banks. Accordingly, the appellants contend that there is no basis for the plaintiffs'
assertions of jurisdiction in Texas. 

 The plaintiffs, however, argued that, because the money involved in the loans at issue initially
came from the State of Texas and the appellants were aware of that fact, Texas courts have
jurisdiction. The plaintiffs also argued that, because the appellants sought discovery prior to the
hearing on their special appearances, they waived their right to contest jurisdiction. The trial court
denied the special appearances, and this appeal ensues pursuant to Tex. Civ. Prac. & Rem. Code
Ann. §51.014(a)(7)(Vernon 1997).


Discussion


A. Standard of Review

 In one issue on appeal, the appellants contend that the trial court erred in denying their special
appearances. When a defendant challenges a Texas court's exercise of personal jurisdiction through
a special appearance, he carries the burden of negating all bases of personal jurisdiction. See CSR
Ltd. v. Link, 925 S.W.2d 591, 596 (Tex.1996). In spite of the holdings of several of our sister courts
of appeals, this court has held that the proper standard of review of a plea to the jurisdiction in an
interlocutory appeal is abuse of discretion.(1)
 (2)
 See Magnolia Gas Co. v. Knight Equip. & Mfg., 994
S.W.2d 684, 689 (Tex. App.-San Antonio 1998, no pet.). Under the abuse of discretion standard,
we may not substitute our judgment for that of the trial court regarding its resolution of factual issues
and we cannot disturb its decision absent a showing of arbitrariness or unreasonableness. See id.
(citing Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992)).

 The appellants must therefore establish that the trial court could reasonably have reached
only one conclusion. Id. Where controlling legal principles are concerned, we exercise less
deference and review de novo, examining whether the trial court analyzed and applied the law
correctly. Id. The trial court abuses its discretion when it misapplies the law. Id. However, if the
trial court's ruling is legally correct, it is immune from appellate revision. Id. 

 Because the record lacks findings of fact and conclusions of law, all questions of fact would
typically be presumed to support the judgment. See Zac Smith & Co. v. Otis Elevator Co., 734
S.W.2d 662, 666 (Tex.1987); Magnolia Gas, 994 S.W.2d at 689. But because our record contains
a reporter's record from the hearing before the trial court, the presumed findings are inconclusive.
See id.

 In this case, the appellants challenge the trial court's denial of their special appearances on
two bases. First, they contend that the trial court erred in finding that appellants had sufficient
minimum contacts with the State of Texas to support specific personal jurisdiction. Next, appellants
maintain that they did not waive their challenge to jurisdiction as the plaintiffs suggest. We will
address the minimum contacts issue first.

B. Personal Jurisdiction

 A court may assert personal jurisdiction over a nonresident defendant only if the requirements
of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and the Texas
long-arm statute are satisfied. See CSR Ltd., 925 S.W.2d at 594; see also Helicopteros Nacionales
de Colombia v. Hall, 466 U.S. 408, 413-14 (1984). The Texas long-arm statute allows a court to
exercise personal jurisdiction over a nonresident defendant who does business in Texas. See Tex.
Civ. Prac. & Rem. Code § 17.042 (Vernon 1997). In addition to several specific activities that
constitute doing business in Texas,(3) the statute provides that "other acts" by the nonresident can
satisfy the requirement. See id.; Guardian Royal Exchange Assurance, Ltd. v. English China Clays,
P.L.C., 815 S.W.2d 223, 226 (Tex. 1991). 

 The "other acts" necessary to satisfy the Texas long-arm statute extend only as far as federal
due process requirements will allow. See CSR, Ltd., 925 S.W.2d at 594. Thus, these federal due
process requirements define the parameters of our review. The questions we must consider include
"(1) whether the nonresident defendant has purposely established 'minimum contacts' with the
forum state; and (2) if so, whether the exercise of jurisdiction comports with 'fair play and
substantial justice.'" Guardian Royal Exchange, 815 S.W.2d at 226 (citing Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 475-76 (1985)); see also International Shoe Co. v. Washington, 326 U.S.
310, 316 (1945); CMMC v. Salinas, 929 S.W.2d 435, 437 (Tex. 1996).

C. Minimum Contacts

 A nonresident defendant's contacts with a forum can give rise to either general or specific
jurisdiction. General jurisdiction arises when the defendant's contacts are continuous and systematic,
allowing the forum to exercise personal jurisdiction over the defendant even if the cause of action did
not arise from or relate to activities conducted within the forum state. See CSR, 925 S.W.2d at 595;
Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990). In this case, however, the parties have
stipulated that Texas courts do not have general jurisdiction over the appellants. Our analysis of
minimum contacts therefore focuses on specific jurisdiction. 

 When specific jurisdiction is asserted, the minimum contacts analysis focuses on the
relationship between the nonresident defendant, the forum, and the litigation. See Guardian Royal
Exchange, 815 S.W.2d at 228; Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc., 835 S.W.2d 645, 650
(Tex. App.-Houston [14th Dist.] 1992, no writ). The minimum contacts requirement is satisfied only
if the cause of action arises from or relates to the nonresident defendant's contact with the forum state.
See CSR, 925 S.W.2d at 595; see also Happy Indus. Corp. v. American Specialties, Inc., 983 S.W.2d
844, 848 (Tex. App.-Corpus Christi 1998, pet. dism'd w.o.j.). 

 The defendant's purposeful conduct must have caused the contact, not the unilateral activity
of the plaintiff or others. See Guardian Royal Exchange, 815 S.W.2d at 227. In other words, the
nonresident defendant's activities must have been "purposefully directed" toward the forum, and the
litigation must result from alleged injuries that arise from or relate to those activities. See id at 228
(citing Burger King, 471 U.S. at 472). This requirement that a defendant purposefully avail himself
of the privilege of conducting activities within the forum state, thus invoking the benefits and
protections of its laws, ensures that a defendant will not be haled into a jurisdiction solely as a result
of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third
person. See Burger King, 471 U.S. at 475.

 In this case, the connection between the appellants, Texas, and the plaintiffs' fraud and
conspiracy claims is tenuous at best. The only relevant relationship in this case is the relationship
between the appellants and Banyan, L.P., Pear Tree, L.P., and Orange Blossom, L.P. While the
record reflects that Gary Case performed individual tax and accounting work for several of the other
plaintiffs, those services do not relate to the present litigation so as to support the plaintiffs' claims
of specific jurisdiction. Therefore, the appellants have no other connection with any of the plaintiffs
other than Banyan, Pear Tree, and Orange Blossom. Given the fact that Banyan, Pear Tree, and
Orange Blossom are Nevada limited partnerships, it is difficult to see how the appellants purposefully
availed themselves of the benefits and protections of Texas law when they borrowed or assisted in
borrowing money from them. 

 The plaintiffs maintain that the nexus between the appellants and Texas is the fact that the
appellants knew that the money they were borrowing came from Texas. They support this contention
with the fact that the majority of the Banyan, Pear Tree, and Orange Blossom limited partners live
in Texas and, because of their close connection with David Tedder, the appellants were aware of this
fact. In essence, the plaintiffs are arguing that Texas jurisdiction should lie because the appellants
conspired with David Tedder to steal "Texas money."

 The connection, though, between the Grammars and the limited partnerships is just too far
removed to justify the plaintiffs' arguments. First, any act on the part of David Tedder is not sufficient
to confer jurisdiction on the appellants. See National Indus. Sand Assoc. v. Gibson, 897 S.W.2d 769,
773 (Tex. 1995) (holding that plaintiff may not use acts of one defendant in the forum to assert
jurisdiction over all co-conspirators); Guardian Royal Exchange, 815 S.W.2d at 227 (noting that the
defendant's purposeful conduct must have caused the contact, not the unilateral activity of the
plaintiff or others). 

 And even assuming that the appellants were aware of the fact that the majority of Banyan's,
Pear Tree's, and Orange Blossom's limited partners were Texas residents, there is nothing to suggest
that the appellants purposefully directed their actions toward Texas when they specifically dealt with
three Nevada limited partnerships. We note that jurisdiction would be questionable even if the
appellants had borrowed the money at issue directly from the Texas limited partners. See
TeleVentures, Inc. v. International Game Tech., 12 S.W.3d 900, 908-09 (Tex. App-Austin 2000, pet.
filed); Magnolia Gas, 994 S.W.2d at 691 (both holding that the mere contracting with a Texas
resident is not enough to confer jurisdiction). 

 As it stands, the loan agreements, whatever form they took, were between two California
companies and three Nevada limited partnerships. The money received via the loans, came not from
Texas, but from those limited partnerships. And the money used to repay the loans, whether or not
the loans have been completely satisfied, was paid to the Nevada limited partnerships. Under these
circumstances, we conclude that the appellants did not purposefully direct their actions toward Texas
in their dealings with Banyan, Pear Tree, and Orange Blossom. Because specific jurisdiction arises
only when the plaintiff's cause of action emanates from the nonresident defendant's contact with the
forum state, we must conclude that the trial court abused its discretion in concluding that it had
specific jurisdiction over the appellants in this case. 

D. Waiver

 The plaintiffs further argue that, even if personal jurisdiction is improper in this case, the
appellants waived their right to contest jurisdiction when they engaged in pre-trial discovery that
extended beyond the scope of jurisdiction. Three of the five appellants in this case apparently engaged
in the discovery process after filing their special appearances. According to the plaintiffs, this
discovery activity included participation in a deposition and the filing of motions to compel answers
to interrogatories and responses to requests for production.(4) The plaintiffs contend that much of this
discovery activity involved issues relevant not only to the appellants' special appearances, but to the
merits of the case, operating to waive the appellants' jurisdictional contest. The plaintiffs base this
argument on Portland Sav. & Loan Ass'n v. Bernstein, 716 S.W.2d 532, 535 (Tex. App.-Corpus
Christi 1985), overruled on other grounds, Dawson-Austin v. Austin, 968 S.W.2d 319 (Tex. 1998). 

 In Portland, the defendants filed a motion for discovery sanctions requesting that "the trial
court 'set the defendants' motion for sanctions for immediate hearing and before any other matter is
heard.'" Id. at 535. The court noted that "although when the subject of the discovery is relevant to
the jurisdictional hearing, it may be permissible to have a hearing on a motion for sanctions before
the jurisdictional hearing, we find, in this case, that it is apparent from the record that the
overwhelming majority of the requested discovery could not be relevant to the proof of jurisdictional
facts." Id. Because the discovery addressed in the motion for sanctions was directed at the merits of
the case and not the jurisdictional hearing, the court held that the defendants waived their
jurisdictional challenge. See id. 

 We find Portland distinguishable on two bases. First, the holding hinges on the fact that the
Portland defendants requested that the discovery motion be heard before any other matter. There was
no such request in this case, and in fact, the motions to compel have yet to be heard. Second, and
more importantly, the Portland holding is in direct conflict with the specific language of the rule upon
which it relies. See Hotel Partners v. Craig, 993 S.W.2d 116, 123 (Tex. App.-Dallas 1994, pet.
denied) (declining to follow Portland). 

 Rule 120a of the Texas Rules of Civil Procedure provides that a party may specially appear
to contest the trial court's jurisdiction over the person of the defendant. See Tex. R. Civ. P. 120a (1).
Rule 120a also provides that "the taking of depositions, the serving of requests for admissions, and
the use of discovery processes, shall not constitute a waiver of such special appearance." Id. The rule
specifically contemplates ongoing discovery by both the party challenging jurisdiction and the party
invoking it, and nothing in the rule limits discovery to matters relating to the special appearance. See
Moore v. Elektro-Mobil Technik GmbH, 874 S.W.2d 324, 328 (Tex. App.-El Paso 1994, writ denied).
 

 Because the plain language of Rule 120a states that the use of the discovery process is not a
waiver of a previously filed special appearance, we must conclude that the trial court erred in finding
that the appellants waived their jurisdictional complaints by seeking discovery that exceeded the
scope of the jurisdiction issue. See Minucci v. Sogevalor, S.A., No. 01-98-01221-CV, 01-98-01327,
2000 WL 232999, at *10 (Tex. App.-Houston [1st Dist.] March 2, 2000, no pet. h.); Hotel Partners,
993 S.W.2d at 123; International Turbine Service, Inc. v. Lovitt, 881 S.W.2d 805, 809 (Tex.
App.-Fort Worth 1994, writ denied); Moore, 874 S.W.2d at 328; Letersky v. Letersky, 820 S.W.2d
12, 14 (Tex. App.-Eastland 1991, no writ).

Conclusion


 We conclude that neither Dan Baer, Gary Case, IBT International, Inc., Southern California
Sunbelt Developers, Inc., nor Gary A. Case, a Professional Corporation conducted purposeful activities
within the State of Texas in their dealings with the plaintiffs. The trial court therefore abused its
discretion in denying the appellants' special appearances and requiring them to defend the plaintiffs'
lawsuit in Texas. The trial court likewise erred in determining that the appellants waived their special
appearances by using the discovery process to seek information pertaining to the merits of the case.
We reverse the trial court's order and dismiss the case against Dan Baer, Gary Case, IBT International,
Inc., Southern California Sunbelt Developers, Inc., and Gary A. Case, a Professional Corporation.


 KAREN ANGELINI

 JUSTICE


PUBLISH


1. Compare Klenk v. Bustamante, 993 S.W.2d 677, 681 (Tex. App.-San Antonio 1998, no pet.) (adopting abuse
of discretion standard for review of denial of special appearance) with C-Loc Retention Systems v. Hendrix, 993 S.W.2d
473, 476 (Tex. App.-Houston [14th Dist.] 1999, no pet.); Hotel Partners v. Craig, 993 S.W.2d 116, 120 (Tex.
App.-Dallas 1994, pet. denied); Ball v. Bigham, 990 S.W.2d 343, 347 (Tex. App.-Amarillo 1999, no pet.); Cadle v.
Graubart, 990 S.W.2d 469, 471 (Tex. App.-Beaumont 1999, no pet.); Happy Indus. Corp. v. American Specialties, Inc.,
983 S.W.2d 844, 847 (Tex. App.-Corpus Christi 1998, pet. dism'd w.o.j.); Garner v. Furmanite Australia Party, Ltd.,
966 S.W.2d 798, 802 (Tex. App.-Houston [1st Dist.] 1998, pet denied) (all adopting factual sufficiency review for fact
findings and de novo review of legal conclusions).



2. This standard was adopted by this court in Klenk, 993 S.W.2d at 681, and subsequently applied by this court
in Magnolia Gas and Jones v. Beech Aircraft Corp., 995 S.W.2d 767 (Tex. App.-San Antonio 1999, pet. dism'd w.o.j.).
However, in Transportes Aereos de Coahuila, S.A. v. Falcon, 5 S.W.3d 712 (Tex. App.-San Antonio 1999, pet.
denied.), we noted that it could be argued that the proper standard of review, even with respect to factual issues, should
be de novo. We noted that such an argument would be particularly persuasive in that case because the trial court had
the same record to review as was presented on appeal. We did not reconsider the proper standard of review though
because we found that applying the more deferential abuse of discretion standard did not affect the ultimate outcome in
that case. Similarly, we do not reconsider the proper standard in this case because it would not affect its outcome.



3. The Texas Civil Practices and Remedies Code specifically identifies the following activities as "doing
business" in Texas:

 (1) contracting by mail or otherwise with a Texas resident and either party is to perform the contract
in whole or in part in this state;

 (2) committing a tort in whole or in part in this state;

 (3) recruiting Texas residents, directly or through an intermediary located in this state, for
employment inside or outside this state.

Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997).
4. We note that appellants Gary A. Case, a Professional Corporation and Dan Baer were not parties to this suit
at the time this discovery activity occurred. Accordingly, the plaintiffs' waiver claim is valid only as it pertains to
appellants Gary Case, SCSD, and IBT.