E.L.M. LeBLANC, Appellant.

v.

Larry KYLE, Appellee.

No. 06–00–00036–CV.

Court of Appeals of Texas,
Texarkana.

Submitted June 29, 2000.
Decided Aug. 10, 2000.
Rehearing Overruled Sept. 12, 2000.

Rick L. Oldenettel, Robert C. McCabe, Oldenettel & McCabe, Houston, for appellant.

Keith W. Marshall, Richardson, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## O P I N I O N

Opinion by Justice GRANT.

This is an accelerated appeal from the trial court's denial of a special appearance. Larry Kyle sued E.L.M. LeBlanc (LeBlanc), Controlled Energy Corporation (Controlled Energy), and Cooper Butane Company (Cooper Butane) alleging that a water heater manufactured by LeBlanc was defective and caused a fire at his home. In his petition, Kyle alleged that he purchased the water heater from Cooper Butane, a Texas company, who received it from Controlled Energy, a Vermont distributor, who in turn received it from LeBlanc, a French manufacturer and distributor.

LeBlanc filed a special appearance in which it asserted that the court did not have jurisdiction over it because (1) it is not a Texas corporation and is not licensed to do business in Texas; (2) it does not engage in and has never engaged in business in Texas; (3) it does not maintain a place of business or have employees or other agents in Texas; and (4) it has not undertaken any act or transaction constituting minimum contacts with Texas, or otherwise acted in a way that would make assumption of jurisdiction comport with the requirements of due process. In support of its special appearance, LeBlanc filed the affidavit of its director general, which detailed the limited extent of its contacts with Texas.

In response to LeBlanc's special appearance, Controlled Energy filed the affidavit of John Norton, its vice president and chief financial officer. Norton's affidavit states that LeBlanc and Controlled Energy entered into a distribution contract in which LeBlanc's stated purpose was to "sell its products ... in the Territory [i.e., the fifty states and the District of Columbia] through the intermediary of a qualified distributor having an organization of sales well-established in the Territory...." The affidavit further states that, under the contract, LeBlanc was obligated to buy product liability insurance for the product sold and to obtain "AGA Lab" approval of its product. It also states that Controlled Energy sold 452 of LeBlanc's water heaters to individuals and dealers in Texas between 1994 and 1999.

Also in response to LeBlanc's special appearance, Cooper Butane filed the affidavit of its owner and president, Frank Miller, which states that Cooper Butane purchased LeBlanc water heaters from L.A. Klein in Dallas. (The record is otherwise silent as to who L.A. Klein is.) Miller also states that, over a fifteen-year period, Cooper Butane has purchased approximately thirty LeBlanc water heaters for resale to its customers in Texas. Miller further states that Cooper Butane handles technical assistance, troubleshooting, and warranty claims through Controlled Energy and that it has made ten such warranty claims.

In a letter to the parties, the trial court denied the special appearance, citing the contract between LeBlanc and Controlled Energy. On appeal LeBlanc contends that the trial court erred in assuming personal jurisdiction. We affirm the judgment of the trial court.

### Standard and Scope of Review

A nonresident defendant must negate all bases of personal jurisdiction to prevail in a special appearance.[1] *CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex.1996). Whether a court can assume personal jurisdiction over a nonresident defendant is a question of law that we review de novo. *Hotel Partners v. Craig*, 993 S.W.2d 116, 120 (Tex.App.Dallas 1994, writ denied). We review the trial court's resolution of any underlying factual questions for factual sufficiency of the evidence.[2] *Id.* We will

---

1. LeBlanc cites *MGM Grand Hotel, Inc. v. Castro*, 8 S.W.3d 403, 408 (Tex.App.Corpus Christi 1999, no pet. h.), which states, "Once the defendant has produced credible evidence negating all bases of jurisdiction, the plaintiff bears the ultimate burden to establish that the Texas court has personal jurisdiction over the defendant as a matter of law." The Corpus Christi court cited no authority for this language, and we decline to follow it.

2. The courts of appeals are split concerning the proper standard of review for the denial of a special appearance. The minority approach is to review the denial of a special appearance for abuse of discretion. *Magnolia Gas Co. v. Knight Equip. & Mfg. Corp.*, 994 S.W.2d 684, 689–90 (Tex.App.San Antonio 1998, no pet.). The majority approach is to review the trial court's resolution of disputed factual issues for factual sufficiency of the evidence, and to review its legal conclusions de novo. *In re Estate of Judd*, 8 S.W.3d 436, 440–41 (Tex.App.El Paso 1999, no pet. h.); *C–Loc Retention Sys., Inc. v. Hendrix*, 993 S.W.2d 473, 476 (Tex.App.Houston [14th Dist.] 1999, no pet.); *Cadle v. Graubart*, 990 S.W.2d 469, 471 (Tex.App.Beaumont 1999, no pet.); *Ball v. Bigham*, 990 S.W.2d 343, 347 (Tex.App.Amarillo 1999, no pet.); *Garner v. Furmanite Australia Pty., Ltd.*, 966 S.W.2d 798, 802 (Tex.App.Houston [1st Dist.] 1998, pet. denied); *Al–Turki v. Taher*, 958 S.W.2d 258, 260–61 (Tex.App.Eastland 1997, pet. denied); *De Prins v. Van Damme*, 953 S.W.2d 7, 13 (Tex.App.Tyler 1997, writ denied); *Hotel Partners v. Craig*, 993 S.W.2d 116, 120 (Tex.App.Dallas 1994, writ denied); *see also Daimler–Benz Aktiengesellschaft v. Olson*, 21 S.W.3d 707, 715 (Tex.App.Austin 2000, no pet. h.).

We agree with the majority approach because whether a court can assert personal jurisdiction over a nonresident defendant is a question of law, but the exercise of such jurisdiction is often preceded by the resolution of underlying factual questions. However, we also agree with the San Antonio court's observation that, in practice, the courts of appeals largely defer to the trial court's factual determinations. *Magnolia Gas*, 994 S.W.2d at 689 n. 5. Thus, the difference between the majority and minority view has had little practical effect.

affirm if we can uphold the trial court's order on any legal theory finding support in the evidence. *See Happy Indus. Corp. v. American Specialties, Inc.*, 983 S.W.2d 844, 846 (Tex.App.Corpus Christi 1998, pet. dism'd w.o.j.); *see also Cartlidge v. Hernandez*, 9 S.W.3d 341, 345 (Tex.App.Houston [14th Dist.] 1999, no pet. h.); *In re Estate of Judd*, 8 S.W.3d 436, 440 (Tex.App.El Paso 1999, no pet. h.); *Transportacion Especial Autorizada, S.A. de C.V. v. Seguros Comercial America, S.A. de C.V.*, 978 S.W.2d 716, 719 (Tex.App.Austin 1998, no pet. h.); *Fish v. Tandy Corp.*, 948 S.W.2d 886, 892 (Tex. App.Fort Worth 1997, writ denied); *Clark v. Noyes*, 871 S.W.2d 508, 511–12 (Tex.App.Dallas 1994, no writ); *NCNB Texas Nat'l Bank v. Anderson*, 812 S.W.2d 441, 445 (Tex.App.San Antonio 1991, no writ).

■ Where, as here, a reporter's record is available on appeal, the parties may challenge these implied findings by factual sufficiency and legal sufficiency points in the same way they could challenge jury findings or a trial court's findings of fact. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex.1989). Where such evidence sufficiency points are raised, the standard of review to be applied is the same as that to be applied in the review of jury findings or a trial court's findings of fact. *Id.*

### Legal Standard Governing Personal Jurisdiction

■ A court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Texas long-arm statute are satisfied. U.S. CONST. amend. XIV, § 1; TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997); *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404, 410 (1984); *CSR*, 925 S.W.2d at 594. The Texas Supreme Court has consistently interpreted the long-arm statute as reaching "as far as the federal constitutional requirements of due process will allow." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991).

■ Under the Due Process Clause, a defendant must have certain minimum contacts with the forum such that maintaining suit there will not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278, 285 (1940)). A nonresident defendant that has purposefully availed itself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528, 542–43 (1985). However, a defendant should not be subject to the jurisdiction of a foreign court based on "random," "fortuitous," or "attenuated" contacts. *Id.*

■ The Texas Supreme Court has articulated a three-prong formula to ensure compliance with the federal standard: (1) there must be a "substantial connection" between the nonresident defendant and Texas arising from action or conduct of the nonresident defendant purposefully directed toward Texas; (2) the cause of action must arise out of or relate to the defendant's contacts with Texas (specific jurisdiction), or if not, the defendant's contacts with Texas must be continuing and systematic (general jurisdiction); and (3) assumption of jurisdiction must not offend traditional notions of fair play and substantial justice. *In re S.A.V.*, 837 S.W.2d 80, 85 (Tex.1992). Neither the Texas formula nor any other test for personal jurisdiction should be applied mechanically. *Schlobohm v. Schapiro*, 784 S.W.2d 355 (Tex.1990).

■ In determining the latter prong of the Texas formulation, due con-

sideration should be given to (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490, 498 (1980); *Guardian Royal,* 815 S.W.2d at 228. When an "international dispute" is involved, courts should also consider: (6) the unique burdens placed on a defendant who must defend itself in a foreign legal system, and (7) the procedural and substantive policies of other nations whose interests are affected, as well as the federal government's interest in its foreign relations policies. *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 114–15, 107 S.Ct. 1026, 1033–34, 94 L.Ed.2d 92, 105–06 (1987); *Guardian Royal,* 815 S.W.2d at 229.

### Analysis

■ LeBlanc cites *CSR,* 925 S.W.2d at 591 and *CMMC v. Salinas,* 929 S.W.2d 435 (Tex.1996), in contending that the trial court had no basis to assert either general or specific jurisdiction. In *CSR,* the Texas Supreme Court issued a writ of mandamus to prevent a trial court from asserting jurisdiction over an Australian company that sold 363 tons of raw asbestos to Johns–Manville, a United States company, which shipped the asbestos to Houston. *CSR,* 925 S.W.2d at 593–94.

The court held that CSR did not have continuous and systematic contacts with Texas sufficient to support general jurisdiction. *Id.* at 595. CSR had no offices, employees, or bank accounts in Texas. *Id.* It had not solicited business in or sent correspondence to Texas. *Id.* It had never owned property, paid taxes, or entered into a contract in Texas. *Id.*

The court also held that the trial court did not have specific jurisdiction over CSR. *Id.* at 595–96. The plaintiffs had argued that CSR knew that Johns–Manville had a plant in Texas and could have foreseen that the asbestos would be used in Texas. *Id.* at 595. The Texas Supreme Court held, however, that foreseeability, standing alone, was insufficient to establish personal jurisdiction in the absence of some act purposefully directed toward selling or distributing the asbestos in Texas. *Id.* at 595–96.

In *CMMC,* the Texas Supreme Court was confronted with a case in which the plaintiff sued a French manufacturer of a winepress, which the plaintiff had purchased from a distributor. *CMMC,* 929 S.W.2d at 436–37. The issue in that case was specific jurisdiction, as CMMC did not have the continuous and systematic contacts necessary for general jurisdiction. *See id.* at 439 ("CMMC's wine-producing equipment did not regularly find its way to Texas. Neither CMMC nor [the distributor] made any effort to market CMMC's equipment in Texas . . . ."). The court held that CMMC's knowledge that its winepress was sold for use in Texas was insufficient to establish jurisdiction in the absence of evidence that CMMC took action to purposely avail itself of the Texas market. *Id.*

LeBlanc contends its evidence shows that, like CSR and CMMC, it has no office, employee, bank account, or property in Texas, and that it has not conducted business in Texas in the last five years. It also contends that Cooper Butane's affidavit shows that Cooper Butane handled its warranty claims through Controlled Energy and not through LeBlanc. This evidence, it contends, is sufficient to negate the continuous and systematic contacts necessary for general jurisdiction.

In response, Kyle contends that the evidence also shows that 452 of LeBlanc's water heaters were sold by Controlled Energy in Texas over the last five years. In contrast, CMMC had shipped only two of

its winepresses to Texas; CSR had supplied an American company with one shipment of asbestos.

We need not decide whether LeBlanc's shipments of 452 water heaters through Controlled Energy, standing alone, would be sufficient to constitute the continuous and systematic contacts necessary for general jurisdiction. The contract between LeBlanc and Controlled Energy demonstrates LeBlanc's purposeful effort to avail itself of the Texas market such that specific jurisdiction is appropriate. The shipment of 452 LeBlanc water heaters into Texas through Controlled Energy is also indicative of LeBlanc's effort to serve the Texas market.

Arguably, specific jurisdiction is negated by the evidence showing that Cooper Butane purchased LeBlanc water heaters from L.A. Klein, unless there is also evidence showing that L.A. Klein purchased these water heaters from Controlled Energy. However, LeBlanc has the burden of negating all bases of personal jurisdiction and therefore bears responsibility for showing that L.A. Klein is not connected with Controlled Energy. *CSR*, 925 S.W.2d at 596. There is some evidence of that connection, in that the evidence shows that Cooper Butane handles its technical assistance, troubleshooting, and warranty claims through Controlled Energy.

LeBlanc contends that the trial court erred in finding that a contract existed between LeBlanc and Controlled Energy. Reviewing for sufficiency of the evidence, however, we find that the record supports the existence of a contract. In fact, the contract's existence is largely uncontroverted in the evidence before us.

LeBlanc next observes that the contract was not alleged to have been signed in Texas, was not alleged to have been made with a Texas company, and was not alleged to require performance in Texas. LeBlanc maintains that, at most, the evidence shows that it released its product into the stream of commerce of the United States market with a limited awareness that it

might end up in Texas. Such actions, LeBlanc contends, are insufficient for specific jurisdiction under the Texas Supreme Court's holdings in *CSR* and *CMMC*, and the United States Supreme Court's holding in *Asahi*.

However, the element the Texas Supreme Court found lacking for assertion of specific jurisdiction in *CSR* and *CMMC*—evidence that the defendant took some purposeful action directed toward Texas—is present in this case. The fact that LeBlanc contracted with Controlled Energy to serve "the fifty states" demonstrates a purposeful effort to serve the United States market, which includes Texas.

LeBlanc cannot hope to avoid jurisdiction in this state, or any other state, by arguing that it intended to serve every state. The contract recites that LeBlanc was interested in selling its products in the "Territory," which it defined as "the fifty states of the United States." These sales were to be conducted "through the intermediary of a qualified distributor with an organization of sales well-established in the Territory." Controlled Energy's shipment of 452 LeBlanc water heaters into Texas demonstrates that LeBlanc's effort achieved some success.

In addition, LeBlanc was to purchase product liability insurance for all the products sold and was to secure AGA Lab approval of its products. These facts demonstrate that LeBlanc understood that it was exposing itself to some risk of liability in its chosen market and that it had to verify that its product was suitable for that market.

Justice Sandra Day O'Connor's plurality opinion in *Asahi* further supports our holding. In *Asahi*, a Japanese tire valve assembly manufacturer contested the power of a California court to hear a case involving a claim for indemnification by a Taiwanese tire tube manufacturer, Cheng Shin Rubber Industrial Company. *Asahi*, 480 U.S. at 106, 107 S.Ct. 1026. Cheng Shin had contended that Asahi knew that

its valve assemblies would be installed in tires bound for the American market and that, thus, jurisdiction was appropriate. *Id.*

Justice O'Connor reasoned that due process requires something more than an awareness that a product will enter the forum through the stream of commerce. *Id.* at 112, 107 S.Ct. 1026. That "something more" is the defendant's action purposely directed to the forum state. *Id.* Justice O'Connor suggested several examples of such action, including:

designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.

*Id.*

Justice O'Connor and three other justices found that such purposeful action was not present because Asahi did not do business or maintain an office, agents, employees, or property in California. *Id.* It did not advertise or solicit business in California. *Id.* It did not create, control, or employ the distribution system that brought its product to California. *Id.* There was also no evidence that Asahi designed its product in anticipation of sales in California. *Id.* at 113, 107 S.Ct. 1026.

In the present case, LeBlanc's intent to serve "the fifty states," as demonstrated by its contract with Controlled Energy, falls within the ambit of other actions contemplated by Justice O'Connor in her plurality opinion. The contract leads to the conclusion that LeBlanc intended to distribute its products in each state of the United States and to utilize a distributor that has an established sales network to facilitate that end. The contract also requires LeBlanc to obtain AGA Lab approval, presumably to show the suitability of its products, and product liability insurance, presumably to minimize the financial risk involved.

LeBlanc contends that the evidence is legally and factually insufficient to support a conclusion that either Controlled Energy or Cooper Butane were its agents in Texas. However, whether either company's relationship with LeBlanc rises to the level of agency is ultimately immaterial to the issue of whether the contract between LeBlanc and Controlled Energy demonstrates LeBlanc's purposeful effort to reach the Texas market.

In *Happy Industrial,* an American manufacturer, ASI, sued Happy, a Japanese manufacturer of commercial embroidery machines. *Happy Industrial,* 983 S.W.2d at 846. ASI purchased two embroidery machines manufactured by Happy from Data–Stitch, which had purchased them from Texmac. *Id.* There was some evidence that Data–Stitch and Texmac represented themselves as Happy's agents in Texas. *Id.* at 852.

The court of appeals found no basis to assert jurisdiction over Happy. *Id.* at 851–52. It held that the evidence showed that Happy's contacts with Texas arose only from ASI's purchase of the two machines. *Id.* at 851. It also held that the evidence failed to show an agency or other relationship between Happy and Data–Stitch or Texmac. *Id.* at 851–52.

In contrast to *Happy Industrial,* Kyle did not allege that Controlled Energy or Cooper Butane were LeBlanc's agents in Texas. Rather, he alleged that the contract between LeBlanc and Controlled Energy represented a purposeful action to reach the Texas market. *Happy Industrial* is also factually distinguishable in that, in the present case, 452 LeBlanc water heaters have been shipped to Texas.

Maintaining this action in Texas also does not offend traditional notions of fair play and substantial justice. Kyle purchased and installed the water heater in Texas, which means that he has a strong interest in litigating the case here. Considering that LeBlanc sent over 450 of its

water heaters into Texas pursuant to its contract with Controlled Energy, LeBlanc could reasonably anticipate being brought into court here. *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559.

Just because this is an "international dispute" does not mean that maintaining jurisdiction in Texas is unfair. In *Asahi,* a majority of the Court found that California did not have a sufficient interest in litigation between a Japanese company and a Taiwanese company. *Asahi,* 480 U.S. at 116, 107 S.Ct. 1026. In contrast, Texas has an interest in litigation between one of its citizens and a manufacturer and supplier of products to its market.

We affirm the judgment of the trial court.