**Gary A. CASE, et al., Appellants,**

v.

**Brenda GRAMMAR, et al., Appellees.**

**No. 04–00–00076–CV.**

Court of Appeals of Texas,
San Antonio.

Aug. 23, 2000.

---

Joe Frazier Brown, Jr., Thornton, Summers, Biechlin, Dunham & Brown, L.C., San Antonio, Vaughan E. Waters, Thornton, Summers, Biechlin, Dunham & Brown, L.C., Corpus Christi, for appellant.

Bryan A. Woods, Bayne, Snell & Krause, Thomas D. Bracey, Law Office of Thomas D. Bracey, Bradley E. Bartlett, Jones, Kurth & Andrews, P.C., San Antonio, for appellee.

Sitting: TOM RICKHOFF, Justice ALMA L. LÓPEZ, Justice KAREN ANGELINI, Justice.

### OPINION

Opinion by: KAREN ANGELINI, Justice.

In this interlocutory appeal, appellants Gary A. Case, Gary A. Case, A Professional Corporation, IBT International, Inc., Southern California Sunbelt Developers, Inc., and Dan W. Baer ("appellants") appeal the denial of their special appearances. In a single issue, the appellants contend that the trial court erred in overruling their objections to jurisdiction and determining either that the appellants had sufficient minimum contacts with Texas to support specific in personam jurisdiction or that the appellants waived their objections to jurisdiction by participating in pretrial discovery. We reverse the trial court's order and render judgment that Texas courts lack jurisdiction over Gary A. Case, Gary A. Case, A Professional Corporation, IBT International, Inc., Southern California Sunbelt Developers, Inc., and Dan W. Baer for purposes of this litigation.

#### FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs/appellees in this case include Brenda Grammar, Daralyn Grammar, Gregory Grammar, G.G.D.G., L.P., Lemonleaf, L.P., Pear Tree, L.P., Peach Blossom, L.P., Cherry Blossom, L.P., Orange Blossom, L.P., Jaguar–Piaget, L.P., Colchester Financial, L.P., Animated Heirlooms, L.P., Gage Art, Inc., Banyan, L.P., Dinvest, L.P., Rancho Verde, L.P., Apple Orchard, L.P., D & B Karnes, L.P., Lemon Grove, L.P., and DBG Leasing L.P ("plaintiffs"). These plaintiffs sued numerous defendants, including the appellants, for their roles in an alleged scheme to defraud the plaintiffs and steal millions of dollars from them. The alleged scheme was apparently masterminded by David Tedder. Tedder is a defendant in the lawsuit but is not a party to this appeal. According to the plaintiffs, however, Tedder is essential to an understanding of the appellants' involvement in this case.

Appellants Dan Baer and Gary Case live and work in the State of California. Baer owns and operates two businesses, appellants IBT International, Inc., (IBT) and Southern California Sunbelt Developers, Inc.(SCSD). Case is a Certified Public Accountant, who does business as appellant Gary A. Case, a Professional Corporation. Case has also served as the controller for IBT. Both Baer and Case have been closely acquainted with David Tedder. Baer met Tedder, a lawyer, in 1984 when he retained Tedder's legal services. Baer and Tedder began officing in the same building in 1986, and Case set up his office in the same building shortly thereafter. At one time, Tedder was president of IBT.

Shortly after he became acquainted with Baer, Tedder became involved in the business of estate planning and asset protection. He conducted seminars through an entity known as the Legal Forum. Through this practice, Tedder apparently became acquainted with the Grammar family, several of whom live in Texas. As part of an asset protection plan, Tedder assisted the Grammars in funding numerous limited partnerships. The Grammars forwarded money to Tedder, who used the money to fund the limited partnerships.

The limited partnership funds were then used to advance loans to various companies and individuals.

In the early 1990s, IBT and SCSD borrowed in excess of one million dollars from three of the Grammar limited partnerships, Banyan, L.P., Pear Tree, L.P., and Orange Blossom, L.P. Banyan, Pear Tree, and Orange Blossom are all Nevada limited partnerships. According to Dan Baer, these loans were arranged by Tedder. IBT and SCSD received the funds via check or wire transfer from one California bank to another. Baer never had any contact with any member of the Grammar family with regard to these loans until he was contacted by Don Grammar, who demanded payment. At the time the loans were made, Baer claims to have had no knowledge that the Grammars had any interest in either Banyan, Pear Tree, or Orange Blossom.

Gary Case acknowledges that he has met members of the Grammar family. Tedder referred Don, Daralyn, and Greg Grammar to Case for preparation of individual tax returns. Case was also hired by Tedder to prepare the tax returns for several of the Grammar limited partnerships, including Banyan, Pear Tree, and Orange Blossom. Accordingly, Case was aware of the Grammars' involvement in the partnerships.

The parties acknowledge that none of the appellants had any dealings with the plaintiffs in this case, other than what is described above. Based upon those dealings, the plaintiffs sued the appellants, alleging that they had committed, in concert with Tedder and the other named defendants, breach of fiduciary duty, fraud, and conspiracy to commit theft. The appellants filed special appearances objecting to in personam jurisdiction in Texas. The trial court conducted a hearing at which Baer, Case, and a representative of the Grammar family testified.

The gist of the appellants' argument to the trial court was that they are California residents and domiciliaries, they conduct no business in Texas, nor do they otherwise have contact with the State of Texas. They argued that their connection to the present suit is based solely on the fact that they, as California residents, borrowed or participated in the borrowing of money from three Nevada limited partnerships. The transactions at issue occurred in California with the assistance of California banks. Accordingly, the appellants contend that there is no basis for the plaintiffs' assertions of jurisdiction in Texas.

The plaintiffs, however, argued that, because the money involved in the loans at issue initially came from the State of Texas and the appellants were aware of that fact, Texas courts have jurisdiction. The plaintiffs also argued that, because the appellants sought discovery prior to the hearing on their special appearances, they waived their right to contest jurisdiction. The trial court denied the special appearances, and this appeal ensues pursuant to Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(7)(Vernon 1997).

### Discussion

#### A. Standard of Review

 In one issue on appeal, the appellants contend that the trial court erred in denying their special appearances. When a defendant challenges a Texas court's exercise of personal jurisdiction through a special appearance, he carries the burden of negating all bases of personal jurisdiction. See CSR Ltd. v. Link, 925 S.W.2d 591, 596 (Tex.1996). In spite of the holdings of several of our sister courts of appeals, this court has held that the proper standard of review of a plea to the jurisdiction in an interlocutory appeal is abuse of

discretion.[1,2] *See Magnolia Gas Co. v. Knight Equip. & Mfg.*, 994 S.W.2d 684, 689 (Tex.App.-San Antonio 1998, no pet.). Under the abuse of discretion standard, we may not substitute our judgment for that of the trial court regarding its resolution of factual issues and we cannot disturb its decision absent a showing of arbitrariness or unreasonableness. *See id.* (citing *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992)).

The appellants must therefore establish that the trial court could reasonably have reached only one conclusion. *Id.* Where controlling legal principles are concerned, we exercise less deference and review *de novo*, examining whether the trial court analyzed and applied the law correctly. *Id.* The trial court abuses its discretion when it misapplies the law. *Id.* However, if the trial court's ruling is legally correct, it is immune from appellate revision. *Id.*

Because the record lacks findings of fact and conclusions of law, all questions of fact would typically be presumed to support the judgment. *See Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex.1987); *Magnolia Gas*, 994 S.W.2d at 689. But because our record contains a reporter's record from the hearing before the trial court, the presumed findings are inconclusive. *See id.*

In this case, the appellants challenge the trial court's denial of their special appearances on two bases. First, they contend that the trial court erred in finding that appellants had sufficient minimum contacts with the State of Texas to support specific personal jurisdiction. Next, appellants maintain that they did not waive their challenge to jurisdiction as the plaintiffs suggest. We will address the minimum contacts issue first.

**B. Personal Jurisdiction**

A court may assert personal jurisdiction over a nonresident defendant only if the requirements of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and the Texas long-arm statute are satisfied. *See CSR Ltd.*, 925 S.W.2d at 594; *see also Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The Texas long-arm statute allows a court to exercise personal jurisdiction over a nonresident defendant who does business in Texas. *See* TEX. CIV. PRAC. & REM.CODE § 17.042 (Vernon 1997). In addition to several specific activities that constitute doing business in Texas,[3] the

---

1. *Compare Klenk v. Bustamante*, 993 S.W.2d 677, 681 (Tex.App.-San Antonio 1998, no pet.) (adopting abuse of discretion standard for review of denial of special appearance) *with C–Loc Retention Systems v. Hendrix*, 993 S.W.2d 473, 476 (Tex.App.-Houston [14th Dist.] 1999, no pet.); *Hotel Partners v. Craig*, 993 S.W.2d 116, 120 (Tex.App.-Dallas 1994, pet. denied); *Ball v. Bigham*, 990 S.W.2d 343, 347 (Tex. App.-Amarillo 1999, no pet.); *Cadle v. Graubart*, 990 S.W.2d 469, 471 (Tex.App.-Beaumont 1999, no pet.); *Happy Indus. Corp. v. American Specialties, Inc.*, 983 S.W.2d 844, 847 (Tex.App.-Corpus Christi 1998, pet. dism'd w.o.j.); *Garner v. Furmanite Australia Party, Ltd.*, 966 S.W.2d 798, 802 (Tex.App.-Houston [1st Dist.] 1998, pet denied) (all adopting factual sufficiency review for fact findings and de novo review of legal conclusions).

2. This standard was adopted by this court in *Klenk*, 993 S.W.2d at 681, and subsequently applied by this court in *Magnolia Gas* and *Jones v. Beech Aircraft Corp.*, 995 S.W.2d 767

(Tex.App.-San Antonio 1999, pet. dism'd w.o.j.). However, in *Transportes Aereos de Coahuila, S.A. v. Falcon*, 5 S.W.3d 712 (Tex. App.-San Antonio 1999, pet. denied.), we noted that it could be argued that the proper standard of review, even with respect to factual issues, should be *de novo*. We noted that such an argument would be particularly persuasive in that case because the trial court had the same record to review as was presented on appeal. We did not reconsider the proper standard of review though because we found that applying the more deferential abuse of discretion standard did not affect the ultimate outcome in that case. Similarly, we do not reconsider the proper standard in this case because it would not affect its outcome.

3. The Texas Civil Practices and Remedies Code specifically identifies the following activities as "doing business" in Texas:

(1) contracting by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

statute provides that "other acts" by the nonresident can satisfy the requirement. *See id.; Guardian Royal Exchange Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991).

The "other acts" necessary to satisfy the Texas long-arm statute extend only as far as federal due process requirements will allow. *See CSR, Ltd.*, 925 S.W.2d at 594. Thus, these federal due process requirements define the parameters of our review. The questions we must consider include "(1) whether the nonresident defendant has purposely established 'minimum contacts' with the forum state; and (2) if so, whether the exercise of jurisdiction comports with 'fair play and substantial justice.'" *Guardian Royal Exchange*, 815 S.W.2d at 226 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)); *see also International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *CMMC v. Salinas*, 929 S.W.2d 435, 437 (Tex.1996).

## C. Minimum Contacts

■ A nonresident defendant's contacts with a forum can give rise to either general or specific jurisdiction. General jurisdiction arises when the defendant's contacts are continuous and systematic, allowing the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *See CSR*, 925 S.W.2d at 595; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990). In this case, however, the parties have stipulated that Texas courts do not have general jurisdiction over the appellants. Our analysis of minimum contacts therefore focuses on specific jurisdiction.

■ When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship between the nonresi-

dent defendant, the forum, and the litigation. *See Guardian Royal Exchange*, 815 S.W.2d at 228; *Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc.*, 835 S.W.2d 645, 650 (Tex.App.-Houston [14th Dist.] 1992, no writ). The minimum contacts requirement is satisfied only if the cause of action arises from or relates to the nonresident defendant's contact with the forum state. *See CSR*, 925 S.W.2d at 595; *see also Happy Indus. Corp. v. American Specialties, Inc.*, 983 S.W.2d 844, 848 (Tex.App.-Corpus Christi 1998, pet. dism'd w.o.j.).

■ The defendant's purposeful conduct must have caused the contact, not the unilateral activity of the plaintiff or others. *See Guardian Royal Exchange*, 815 S.W.2d at 227. In other words, the nonresident defendant's activities must have been "purposefully directed" toward the forum, and the litigation must result from alleged injuries that arise from or relate to those activities. *See id.* at 228 (citing *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174). This requirement that a defendant purposefully avail himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person. *See Burger King*, 471 U.S. at 475, 105 S.Ct. 2174.

■ In this case, the connection between the appellants, Texas, and the plaintiffs' fraud and conspiracy claims is tenuous at best. The only relevant relationship in this case is the relationship between the appellants and Banyan, L.P., Pear Tree, L.P., and Orange Blossom, L.P. While the record reflects that Gary Case performed individual tax and accounting work for several of the other plaintiffs, those services do not relate to the present litigation so as to support the plaintiffs' claims of specific jurisdiction.

(2) committing a tort in whole or in part in this state;

(3) recruiting Texas residents, directly or through an intermediary located in this

state, for employment inside or outside this state.

TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997).

Therefore, the appellants have no other connection with any of the plaintiffs other than Banyan, Pear Tree, and Orange Blossom. Given the fact that Banyan, Pear Tree, and Orange Blossom are Nevada limited partnerships, it is difficult to see how the appellants purposefully availed themselves of the benefits and protections of Texas law when they borrowed or assisted in borrowing money from them.

The plaintiffs maintain that the nexus between the appellants and Texas is the fact that the appellants knew that the money they were borrowing came from Texas. They support this contention with the fact that the majority of the Banyan, Pear Tree, and Orange Blossom limited partners live in Texas and, because of their close connection with David Tedder, the appellants were aware of this fact. In essence, the plaintiffs are arguing that Texas jurisdiction should lie because the appellants conspired with David Tedder to steal "Texas money."

The connection, though, between the Grammars and the limited partnerships is just too far removed to justify the plaintiffs' arguments. First, any act on the part of David Tedder is not sufficient to confer jurisdiction on the appellants. *See National Indus. Sand Assoc. v. Gibson,* 897 S.W.2d 769, 773 (Tex.1995) (holding that plaintiff may not use acts of one defendant in the forum to assert jurisdiction over all co-conspirators); *Guardian Royal Exchange,* 815 S.W.2d at 227 (noting that the *defendant's* purposeful conduct must have caused the contact, not the unilateral activity of the plaintiff or others).

And even assuming that the appellants were aware of the fact that the majority of Banyan's, Pear Tree's, and Orange Blossom's limited partners were Texas residents, there is nothing to suggest that the appellants purposefully directed their actions toward Texas when they specifically dealt with three Nevada limited partner-

ships. We note that jurisdiction would be questionable even if the appellants had borrowed the money at issue directly from the Texas limited partners. *See TeleVentures, Inc. v. International Game Tech.,* 12 S.W.3d 900, 908–09 (Tex. App–Austin 2000, pet. filed); *Magnolia Gas,* 994 S.W.2d at 691 (both holding that the mere contracting with a Texas resident is not enough to confer jurisdiction).

As it stands, the loan agreements, whatever form they took, were between two California companies and three Nevada limited partnerships. The money received via the loans, came not from Texas, but from those limited partnerships. And the money used to repay the loans, whether or not the loans have been completely satisfied, was paid to the Nevada limited partnerships. Under these circumstances, we conclude that the appellants did not purposefully direct their actions toward Texas in their dealings with Banyan, Pear Tree, and Orange Blossom. Because specific jurisdiction arises only when the plaintiff's cause of action emanates from the nonresident defendant's contact with the forum state, we must conclude that the trial court abused its discretion in concluding that it had specific jurisdiction over the appellants in this case.

### D. Waiver

■ The plaintiffs further argue that, even if personal jurisdiction is improper in this case, the appellants waived their right to contest jurisdiction when they engaged in pre-trial discovery that extended beyond the scope of jurisdiction. Three of the five appellants in this case apparently engaged in the discovery process after filing their special appearances. According to the plaintiffs, this discovery activity included participation in a deposition and the filing of motions to compel answers to interrogatories and responses to requests for production.[4] The plaintiffs contend that much

---

4. We note that appellants Gary A. Case, a Professional Corporation and Dan Baer were

not parties to this suit at the time this discovery activity occurred. Accordingly, the plain-

of this discovery activity involved issues relevant not only to the appellants' special appearances, but to the merits of the case, operating to waive the appellants' jurisdictional contest. The plaintiffs base this argument on *Portland Sav. & Loan Ass'n v. Bernstein,* 716 S.W.2d 532, 535 (Tex.App.-Corpus Christi 1985), *overruled on other grounds, Dawson–Austin v. Austin,* 968 S.W.2d 319 (Tex.1998).

In *Portland,* the defendants filed a motion for discovery sanctions requesting that "the trial court 'set the defendants' motion for sanctions for immediate hearing and before any other matter is heard.'" *Id.* at 535. The court noted that "although when the subject of the discovery is relevant to the jurisdictional hearing, it may be permissible to have a hearing on a motion for sanctions before the jurisdictional hearing, we find, in this case, that it is apparent from the record that the overwhelming majority of the requested discovery could not be relevant to the proof of jurisdictional facts." *Id.* Because the discovery addressed in the motion for sanctions was directed at the merits of the case and not the jurisdictional hearing, the court held that the defendants waived their jurisdictional challenge. *See id.*

We find *Portland* distinguishable on two bases. First, the holding hinges on the fact that the *Portland* defendants requested that the discovery motion be heard before any other matter. There was no such request in this case, and in fact, the motions to compel have yet to be heard. Second, and more importantly, the *Portland* holding is in direct conflict with the specific language of the rule upon which it relies. *See Hotel Partners v. Craig,* 993 S.W.2d 116, 123 (Tex.App.-Dallas 1994, pet. denied) (declining to follow *Portland*).

Rule 120a of the Texas Rules of Civil Procedure provides that a party may specially appear to contest the trial court's jurisdiction over the person of the defendant. *See* Tex.R. Civ. P. 120a(1). Rule 120a also provides that "the taking of de-

tiffs' waiver claim is valid only as it pertains

positions, the serving of requests for admissions, and the use of discovery processes, shall not constitute a waiver of such special appearance." *Id.* The rule specifically contemplates ongoing discovery by both the party challenging jurisdiction and the party invoking it, and nothing in the rule limits discovery to matters relating to the special appearance. *See Moore v. Elektro–Mobil Technik GmbH,* 874 S.W.2d 324, 328 (Tex.App.-El Paso 1994, writ denied).

Because the plain language of Rule 120a states that the use of the discovery process is not a waiver of a previously filed special appearance, we must conclude that the trial court erred in finding that the appellants waived their jurisdictional complaints by seeking discovery that exceeded the scope of the jurisdiction issue. *See Minucci v. Sogevalor, S.A.,* 14 S.W.3d 790, 801 (Tex.App.-Houston [1st Dist.] 2000, no pet. h.); *Hotel Partners,* 993 S.W.2d at 123; *International Turbine Service, Inc. v. Lovitt,* 881 S.W.2d 805, 809 (Tex.App.-Fort Worth 1994, writ denied); *Moore,* 874 S.W.2d at 328; *Letersky v. Letersky,* 820 S.W.2d 12, 14 (Tex.App.-Eastland 1991, no writ).

CONCLUSION

We conclude that neither Dan Baer, Gary Case, IBT International, Inc., Southern California Sunbelt Developers, Inc., nor Gary A. Case, a Professional Corporation conducted purposeful activities within the State of Texas in their dealings with the plaintiffs. The trial court therefore abused its discretion in denying the appellants' special appearances and requiring them to defend the plaintiffs' lawsuit in Texas. The trial court likewise erred in determining that the appellants waived their special appearances by using the discovery process to seek information pertaining to the merits of the case. We reverse the trial court's order and dismiss the case against Dan Baer, Gary Case,

to appellants Gary Case, SCSD, and IBT.

IBT International, Inc., Southern California Sunbelt Developers, Inc., and Gary A. Case, a Professional Corporation.