**In re Sherre Taylor SIMS.**

No. 04–02–00357–CV.

Court of Appeals of Texas, San Antonio.

July 17, 2002.

Salvador Espino, Terrell W. Oxford, Susman Godfrey, L.L.P., Dallas, for Appellant.

Cheryl L. Wilson, Wilson, Pennypacker & Negen, L.L.P., Patrick K. Sheehan, Cauthorn Hale Hornberger Fuller Sheehan Becker & Beiter Inc., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice.

Opinion by: ALMA L. LÓPEZ, Justice.

Relator, Sherre Taylor Sims, filed this original proceeding seeking relief from the trial court's order granting real party in interest's plea in abatement. Specifically, Sims contends that the trial court abused its discretion in abating the lawsuit she filed in Bexar County in favor of a later filed declaratory judgment action in Medina County, Texas. We conditionally grant the writ of mandamus.

## BACKGROUND

The final divorce decree of Sherre Cammack (now Sherre Taylor Sims) and Huette "Sonny" Cammack was entered on July 23, 1998 in the 37th Judicial District Court of Bexar County. That decree recognized an "Agreement Incident to Divorce" (the "Agreement") between Sims and Cammack. The divorce decree specifically approved the Agreement and incorporated it by reference. The decree also provided that it expressly reserved the right "to make orders necessary to clarify and enforce th[e] Decree." The purpose of the Agreement was to settle the rights of Sims and Cammack as to all marital property, assets, debts and obligations as between themselves, their heirs and assigns.

The Agreement specifically provides for the payment of contractual alimony by Cammack to Sims. Under section 6, Cammack must pay Sims $5,000.00 per month as alimony until the earlier of: (1) twenty-five years from the date of the initial monthly alimony payment; or (2) Sims's exercise of her option to terminate payment of the monthly alimony amount in lieu of a cash payment. The Agreement defines the conditions which trigger Sims's option for a cash payment. Paragraph

7.01 of the Agreement provides that upon the occurrence of an "equity transfer" Sims could opt for a cash payment of $1,500,000.00, less contractual alimony paid to that point. The Agreement defines an "equity transfer" as:

> any transaction in which Huette "Sonny" Cammack or his estate or heirs, sell, assign, transfer, convey or suffer or permit the transfer or assignment of any percentage of the equity securities of Alamo Water Refiners, Inc. or its successors (through merger, consolidation or otherwise) that will result in more than 50% of the equity ownership of Alamo Water Refiners, Inc. or its successors being owned by persons other than (1) Huette "Sonny" Cammack; (ii) his estate; (iii) his heirs; (iv) an intervivos or testamentary trust of Huette "Sonny" Cammack or his heirs are the principal beneficiaries; (v) a limited partnership, limited liability company, corporation or other such entity as to which Huette "Sonny" Cammack or his heirs are the principal partners, members, shareholders, or beneficiaries, as the case may be or (vi) a combination thereof.

Pursuant to Paragraph 7.02 of the Agreement, Sims would be provided with a 30 day notice of any proposed closing of a transaction that would amount to an equity transfer. Upon receiving such notice, Sims would then have 30 days to exercise her option for a cash payment. If she failed to exercise the option within that time frame, the option would lapse.

By her first amended petition, Sims alleged that on or about August 9, 2000, Cammack sold or transferred Alamo Water Refiners, Inc. to the Marmon Group and/or Matt-son Inc. (the "Marmon Group"). Sims alleged Cammack failed to notify her of this transaction as required under the Agreement. Rather, she discov-

ered the transaction on her own in November 2000. Sims subsequently gave Cammack written notification of her election to exercise her option to receive the $1.5 million cash payment. Cammack refused the request. Sims subsequently filed suit on May 18, 2001, in the 37th District Court, Bexar County, Texas, for breach of contract and to enforce the divorce decree. This was the same court that entered the 1998 divorce decree. Cammack filed a general denial answer denying Sims's allegations and claims.

Cammack's answer would turn out to be his last word on the matter. On September 30, 2001, Cammack died. An application to probate his last will and testament was filed in the County Court at Law of Medina County on October 11, 2001. An order admitting Cammack's will to probate was entered by the County Court at Law on October 22, 2001. Pursuant to the will, Frost National Bank ("Frost Bank") was appointed the independent executor of Cammack's estate. Sims filed a suggestion of death and a request for issuance of a writ of scire facias pursuant to Texas Rule of Civil Procedure 154 in Bexar County. On December 13, 2001, the trial court in Bexar County entered an order substituting Frost Bank for Cammack as defendant in Sims's lawsuit and issued the writ of scire facias.

On January 4, 2002, Frost Bank filed an original petition in the County Court at Law of Medina County against Sims seeking a declaratory judgment regarding its duty to pay the $1.5 million under the Agreement and its continued obligation to make monthly alimony payments. In its petition, Frost Bank specifically contended that the Alamo Works Marmon Group transaction did not constitute an equity transfer which triggered Sims's option. Frost Bank also began depositing the $5,000.00 monthly payments into the court's registry alleging the Agreement was unclear on whether Sims should be paid pending her lawsuit. Sims responded by filing a plea to the jurisdiction, plea in abatement, original answer and counter-claims on March 4, 2002 in Medina County.[1] Sims's answer and counter-claims for breach of contract were made subject to her special pleas. In those pleas, she contended that the Bexar County District Court had exclusive and/or dominate jurisdiction over the dispute.

On January 4, 2002, the same day Frost Bank filed its petition in Medina County, Frost Bank also filed a plea in abatement, plea to the jurisdiction and original answer in Bexar County asserting that Sims was wrongfully attempting to litigate an issue that was appertaining and incident to the Estate of Huette Cammack in the County Court at Law in Medina County, Texas. Frost Bank sought abatement of the Bexar County suit alleging that the County Court at Law of Medina County had exclusive and/or dominant jurisdiction. On January 14, 2002, Sims filed a first amended petition in the Bexar County District Court naming Frost Bank respondent in place of Cammack and adding a declaratory judgment action to her claims. On Sims's motion, a hearing on Frost Bank's plea was held on February 21, 2002, in the 37th Judicial District Court, Bexar County, Texas. After hearing arguments, respondent orally granted Frost Bank's plea. A written order was subsequently entered on April 3, 2002, abating Sims's lawsuit pending a final resolution of the declaratory judgment action in Medina County. Notwithstanding the special pleas Sims filed with the court in Medina County, the record reflects that she served requests for disclosures and requests for production on

1. A first amended plea was subsequently filed on March 12, 2002.

Frost Bank in the declaratory judgment action on April 18, 2002. She subsequently filed this mandamus in the Bexar County lawsuit on May 16, 2002.

## STANDARD OF REVIEW

In this mandamus proceeding, Sims must show that the trial court's granting of Frost Bank's plea in abatement was an abuse of discretion for which there is no adequate remedy by by appeal. See *Walker v. Packer*, 827 S.W.2d 833, 842 (Tex.1992); *Dallas Fire Ins. Co. v. Davis*, 893 S.W.2d 288, 291 (Tex.App.-Fort Worth 1995) (orig.proceeding). When a trial court must make a determination of the legal principles controlling an issue, the court has no discretion in determining what the law is or in applying the law to the facts. See *Walker*, 827 S.W.2d at 842. "Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ." *Walker*, 827 S.W.2d at 840.

## DOMINANT JURISDICTION

As a general rule, when suit would be proper in more than one county, the court in which suit is first filed acquires dominant jurisdiction to the exclusion of other courts. See *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988); *Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex.1974). In *Curtis*, the Texas Supreme Court stated:

> Any subsequent suit involving the same parties and the same controversy must be dismissed if a party to that suit calls the second court's attention to the pendency of the prior suit by a plea in abatement. If the second court refuses to sustain a proper plea in abatement, or attempts to interfere with the prior action, this court has the power to act by mandamus or other appropriate writ to settle the conflict of jurisdictions.

511 S.W.2d at 267. Following this rationale, one Texas court of appeals has held that a trial court abuses its discretion for purposes of mandamus when it abates a case in favor of a later filed action in another county. See *Davis*, 893 S.W.2d at 292.

In *Davis*, the relators, two insurance companies, issued business auto policies to Bennett Rathole Services, Inc. The relators represented Bennett in a lawsuit filed in Leon County, Texas, by individuals injured in a car accident involving a Bennett employee. That lawsuit eventually resulted in a judgment against the relators. Prior to that judgment, the relators made various attempts to avoid liability by specifically contesting their duty to defend Bennett. For example, in August 1993, one of the relators filed a declaratory judgment action in Tarrant County, Texas, asserting that the accident was not covered by its policy and therefore negated its duty to defend. Almost one year later, the relators were sued in Panola County, Texas, by the plaintiffs in the former Leon County action who attempted to collect on the Leon County judgment. The district court in Tarrant County abated the Tarrant County action until final judgment was issued in the Panola County action. The relators sought mandamus relief. The court of appeals conditionally granted the writ of mandamus on the basis that the trial court in the first filed Tarrant County action had no discretion to abate the case in favor of the Panola County action. See *id.* Specifically, the court held that the facts of the case reflected that the two cases were inherently related, and therefore, jurisdiction was dictated by the general rule of dominant jurisdiction. See *id.* The court conditionally granted relators's writ of mandamus. See *id.*

■ Similarly, in the instant matter, the trial court in Bexar County, the first filed action, granted Frost Bank's plea to abate the case in favor of the later filed declaratory judgment action and probate proceedings in Medina County. Because we believe the facts of this case clearly invoke the application of dominant jurisdiction, we are persuaded by *Davis* and conclude that its application to the instant matter warrants our holding that respondent abused his discretion in abating Sims's lawsuit in Bexar County.

In order for Frost Bank to have succeeded on its plea in abatement, it needed to show that (1) the Medina County declaratory suit commenced first; (2) the suit is still pending; (3) the same parties are involved; and (4) the controversies are the same. *See S. County Mut. Ins. Co. v. Ochoa,* 19 S.W.3d 452, 468 (Tex.App.-Corpus Christi 2000, no pet.). The record conclusively establishes that Frost Bank cannot meet the first element. The record reflects Sims filed suit on May 18, 2001, in Bexar County in the same court the divorce decree was entered. Cammack answered. The probate proceedings in Medina County did not begin until October 2001. Subsequently, Frost Bank filed its declaratory judgment action on January 4, 2002, as part of the probate proceeding.

■ Where two actions involving the same subject matter are brought in different courts having concurrent jurisdiction, the court which first acquires jurisdiction should retain such jurisdiction, undisturbed by the interference of another court, and dispose of the controversy. *See Latham v. Thornton,* 806 S.W.2d 347, 350 (Tex.App.-Fort Worth 1991) (orig.proceeding). It is not required that the exact issues and all the parties be included in the first action before the second action is filed, provided that the claim in the first suit may be amended to bring in all neces-

sary and proper parties and issues. *See Wyatt,* 760 S.W.2d at 247. The test is whether there is an inherent interrelation of the subject matter in the two suits. *See Davis,* 893 S.W.2d at 292. As long as the forum of the first action is proper, the plaintiff's choice of forum must be respected, and a defendant is "simply not at liberty to decline to do battle in the forum chosen by the plaintiff." *Wyatt,* 760 S.W.2d at 248. Sims's lawsuit for breach of contract and enforcement of the divorce decree involves the same parties as Frost Bank's declaratory judgment action in Medina County. The same subject matter, the Agreement and its application to the Alamo Water Marmon Group transaction, exists in both suits. Finally, the same controversy also exists—whether the Alamo Water Marmon Group transaction triggered Sims's option to a cash payment. Based on these facts, we conclude that there is an inherent interrelation of the subject matter of the two suits and hold that dominant jurisdiction required that Sims's lawsuit in Bexar County should not have been abated. Accordingly, the trial court had no discretion to abate Sims's lawsuit in Bexar County in favor of the lawsuit in Medina County. *See Davis,* 893 S.W.2d at 292.

■ In response to Sims's petition, Frost Bank contends that the issues are not exactly identical because it is asserting two other issues in the declaratory judgment action not raised in the Bexar County lawsuit: (1) its obligation, if any, to continue paying Sims monthly alimony and (2) the probate court's jurisdiction over funds deposited into its registry. We are unpersuaded by Frost Bank's argument. First, its continued obligation, if any, to make monthly alimony payments to Sims was properly before the Bexar County District Court when the case was abated. The record reflects that in March 2002, after Frost Bank ceased making the

monthly payments, Sims amended her petition in that court to include a declaratory judgment action regarding Frost Bank's duty to make monthly alimony payments under the Agreement. The following month, Sims filed a motion for temporary orders in Bexar County seeking relief in the form of continued monthly payments.[2] Second, we are unpersuaded by Frost Bank's assertion that its unilateral act of inter-pleading funds into the registry of the Medina County Court can circumvent the application of dominant jurisdiction. Frost Bank fails to cite legal authority supporting such a proposition and we cannot find such authority.[3] Rather, we are guided by the proposition that it was not necessary that the exact same issues had to be included in the Bexar County action before Frost Bank filed its lawsuit in Medina County. *See Wyatt*, 760 S.W.2d at 247. The pleadings in Bexar County have been amended to bring in the issues asserted in Medina County. *See id.* Accordingly, the issue regarding Frost Bank's duty to continue monthly alimony payments to Sims was properly before the Bexar County District Court.[4]

## WAIVER

■■■■ Frost Bank next asserts that Sims is not entitled to mandamus relief on

the basis that she waived her right to seek such relief. Violation of the rule of dominant jurisdiction is a waivable error. *See Starnes v. Holloway*, 779 S.W.2d 86, 94 (Tex.App.-Dallas 1989, writ denied). First, Frost Bank asserts Sims waived any complaint because she initiated the setting of the hearing on Frost Bank's plea in abatement. The record reflects that Sims filed a motion in Bexar County to set the hearing on Frost Bank's plea. However, we do not believe this act constitutes waiver on Sims's part. Frost Bank does not cite any authority for such a proposition nor can we find such authority. By Frost Bank's logic, anytime a party sets a hearing on an opposing party's motion, that party waives any complaint it may have if it obtains an adverse ruling after the hearing. This, we refuse to hold. Sims's motion for a hearing reflects that she filed a response to Frost Bank's plea in abatement in Bexar County. Frost Bank does not contest such a response was filed. Sims also asserted her contentions against granting the plea in abatement at the hearing. Under these facts, we conclude that Sims did not waive her argument of dominant jurisdiction.

■■■■ Frost Bank also contends that Sims waived the issue of dominant juris-

---

2. A hearing on Sims's motion for temporary orders was set for the same day as the hearing on Frost Bank's plea in abatement. Given the fact the Bexar County District Court granted Frost Bank's plea, it did not hear and rule on the motion for temporary orders filed by Sims.

3. Additionally, the fact that the money deposited with the court in Medina County is part of Cammack's estate does not establish the exclusive jurisdiction of the probate court. A court empowered with probate jurisdiction may only exercise its probate jurisdiction over matters incident to the estate when a probate proceeding relating to such matter is already pending in that court. *See Bailey v. Cherokee County Appraisal Dist.*, 862 S.W.2d 581, 585

(Tex.1993); *Schuld v. Dembrinski*, 12 S.W.3d 485, 487 (Tex.App.-Dallas 2000, no pet.). The record clearly reflects that probate proceedings were not pending when Sims filed suit.

4. At the hearing on the plea in abatement in the Bexar County District Court, Frost Bank stated that Sims's act of amending her pleadings after Frost Bank had filed its declaratory judgment action was "very KG." Frost Bank implied that Sims was trying to circumvent the county court at law's probate jurisdiction by bringing in the claims Frost Bank had alleged in its declaratory judgment action in Medina County. As noted above, Sims was free to do this given the fact that she had filed her lawsuit first. *See Wyatt*, 760 S.W.2d at 247.

diction by submitting to the County Court at Law's jurisdiction in Medina County when she filed her counterclaims. Frost Bank specifically points to Sims's failure to condition her request for judgment in the section entitled "Prayer for Relief" of her responsive petition. According to Frost Bank, Sims effectively acquiesced to the jurisdiction of the Medina County court by requesting affirmative relief. *See Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex.1998) (stating a defendant makes a general appearance, and therefore negates a special appearance, when it seeks affirmative action from the court). Frost Bank ignores the rest of Sims's responsive pleadings in the Medina County lawsuit where she expressly states that her answer and counterclaims are "subject to the jurisdiction and plea in abatement." The record also reflects that Sims filed a timely plea in abatement in Medina County contesting that court's jurisdiction. Based upon the record, we conclude that Sims did not submit to the jurisdiction of the County Court at Law in Medina County and waive the issue of dominant jurisdiction in this proceeding.[5] *Cf. Starnes*, 779 S.W.2d at 94 (stating that a party waives alleged error regarding dominant jurisdiction unless a party raises the pendency of an earlier filed suit by a timely plea in abatement).

▬▬▬ Finally, Frost Bank contends that Sims waived her claim for mandamus relief because she served Frost Bank with discovery in the declaratory judgment action in Medina County. Once again, Frost Bank fails to cite any authority for its contention. The record reflects that after the Bexar County District Court granted Frost Bank's plea in abatement, Sims sent requests for disclosures and requests for production to Frost Bank in the Medina County case. Sims expressly stated that her discovery was "subject to her Plea to the Jurisdiction and Plea in Abatement." This court has previously held that a party does not waive its contentions regarding a trial court's lack of personal jurisdiction when it engages in the discovery process. *See Case v. Grammar*, 31 S.W.3d 304 (Tex. App.-San Antonio 2000, no pet.) (holding that defendant's participation in depositions and compelling plaintiff's responses to interrogatories and requests for production did not negate defendant's special appearance under Rule 120a). Further, other Texas courts have held that a party does not waive a special plea even if it seeks the trial court's protection from the discovery process. *See Indus. State Bank of Houston v. Eng'g Serv. & Equip.*, 612 S.W.2d 661, 664 (Tex.Civ.App.-Dallas 1981, no writ). In light of this precedent, we conclude that Sims did not acquiesce to the court's jurisdiction in Medina County and waive the issue of dominant jurisdiction.

## ADEQUATE REMEDY ON APPEAL

Frost Bank also contends that this court should deny Sims's petition on the basis that she has adequate legal remedies. In support of this argument, Frost Bank asserts that the Fort Worth Court of Appeals's opinion in *Davis* was incorrectly

---

**5.** While Frost Bank cites *Dawson Austin* to support its waiver argument, a closer reading of that case supports Sims. In *Dawson-Austin*, one of the issues the Texas Supreme Court faced was whether the appellant had made a general appearance for purposes of negating her special appearance. Construing Rule 120a of the Texas Rules of Civil Procedure, the Court concluded that the appellant's motion to quash, plea to the jurisdiction and plea in abatement did not constitute a general appearance even though the appellant failed to state the motion and pleas were "subject to" her special appearance. In the instant matter, unlike the appellant in *Dawson Austin*, Sims expressly conditioned her answer and counterclaims on her plea in abatement.

decided and should not be followed by this court.

■ Frost Bank contends *Davis* runs contrary to the Texas Supreme Court opinion in *Abor v. Black* wherein the Court stated that appellate courts generally lack jurisdiction to issue writs of mandamus to supervise or correct incidental rulings of a trial judge when there is an adequate remedy on appeal. 695 S.W.2d 564, 566 (Tex. 1985). Incidental rulings include a trial court's rulings on a plea in abatement. *See id.* In *Abor*, the relator had filed a wrongful death action against a pharmaceutical company. That suit was subsequently removed to federal court and ultimately dismissed. When no suit was pending, one of the defendants in the first lawsuit filed a declaratory judgment action in Bell County, Texas, in which the pharmaceutical company intervened. The relator then refiled her wrongful death action in Harris County. She also filed a plea in abatement in the Bell County lawsuit which was ultimately denied. On appeal, the Texas Supreme Court commented that the Bell County court should have declined to exercise jurisdiction; however, it refused to grant Abor's petition on the basis that Abor had a remedy on appeal to correct the trial court's error in denying the plea. *See id.; see also Trapnell v. Hunter*, 785 S.W.2d 426, 429 (Tex.App.-Corpus Christi 1990) (orig.proceeding). Unlike the facts in *Curtis v. Gibbs*, the court noted that the Bell County court had done nothing to actively interfere with the exercise of jurisdiction in the Harris County District Court. Following *Abor*, this court refused to grant mandamus relief when a trial court denied a plea in abatement in a lawsuit despite the existence of a pending lawsuit which had been previously filed containing the same parties and issues. *See Allstate Ins. Co. v. Garcia*, 822 S.W.2d 348, 349 (Tex.App.-San Antonio 1992) (orig.proceeding). We held so on the basis that the trial court in the first suit had not been prevented from proceeding nor had refused to proceed to trial. *See id.; see also Davis*, 893 S.W.2d at 294; *Trapnell*, 785 S.W.2d at 429.

■ We do not consider whether the County Court at Law of Medina County has interfered with the Bexar County District Court's jurisdiction because it is the Bexar County District Court which has effectively refused to proceed to trial. *See Davis*, 893 S.W.2d at 294; *Garcia*, 822 S.W.2d at 349. When the Bexar County District Court granted Frost Bank's plea in abatement, it effectively denied Sims any other method of challenging its ruling for an indefinite period of time. *See Trapnell*, 785 S.W.2d at 429. Because a trial court may not arbitrarily suspend the trial proceedings, mandamus will lie to compel a trial court to proceed to trial and judgment in a case pending in his or her court. *See id.* On this basis, we hold that Sims has no adequate remedy on appeal.

## CONCLUSION

We sustain Sims's sole issue. We hold that respondent had no discretion to grant Frost Bank's plea in abatement and that mandamus is available to correct this extraordinary type of plea in abatement case. We conditionally grant Sims's petition for writ of mandamus. A writ will issue only if respondent fails to vacate his order of abatement within ten (10) days from the issuance of this opinion.