

## Fourth Court of Appeals
### San Antonio, Texas

## OPINION

No. 04-24-00066-CV

**IN RE PIONEER ENERGY SERVICES CORP. AND PIONEER DRILLING SERVICES, LTD.**

Original Mandamus Proceeding[1]

Opinion by:     Beth Watkins, Justice

Sitting:     Luz Elena D. Chapa, Justice
             Beth Watkins, Justice
             Lori I. Valenzuela, Justice

Delivered and Filed: July 17, 2024

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

Relators Pioneer Energy Services Corp. and Pioneer Drilling Services, Ltd. (collectively, the Pioneer entities) filed a petition for writ of mandamus challenging the trial court's denial of their plea in abatement. We conditionally grant the petition.

### BACKGROUND

In May of 2021, a vehicle driven by Jonathan Lawhorn and purportedly owned by J&J's Bargain Barn, LLC collided with a vehicle driven by real party in interest Christian Luna and purportedly owned by Blue Star Towing, LLC.[2] The collision occurred in Dawson County, Texas.

---

[1] This proceeding arises out of Cause No. 2022-CI-20075, styled *Shonda Bryce, Christian Luna, and Kimberly Luna, Individually and as Next Friend of M.L., a Minor v. Pioneer Energy Services Corp., Pioneer Drilling Services Ltd., EOG Resources, Inc., Tammy Lawhorn as Representative of the Estate of Jonathan Lawhorn, Stephanie Anders, J&J's Bargain Barn, LLC, True Directional Services, LLC and Total Directional Services, LLC*, pending in the 37th Judicial District Court, Bexar County, Texas, the Honorable Cynthia Marie Chapa presiding.

[2] These recitations of the vehicles' owners are taken from the allegations in the parties' pleadings. We express no opinion on the merits of those allegations, which are not at issue in this proceeding.

Lawhorn and his three passengers—Taylor Bryce, Jimmy Lee Sipes, and Colt Alan Atkins—died, and Luna was injured. The Pioneer entities contend that Lawhorn, Bryce, Sipes, and Atkins were employed by Pioneer Drilling at the time of the collision, and that Pioneer Energy is a separate entity.

On August 27, 2021, the widows of Bryce and Sipes (the Ector County plaintiffs) sued Luna and Blue Star in Ector County. Their petition, which did not name any other defendants, alleged Ector County was a proper venue because Blue Star maintained its principal place of business there and Luna resided there. On August 19, 2022, Atkins's widow intervened in the Ector County lawsuit, and the record indicates that her original petition in intervention did not name any additional defendants.

On October 10, 2022, Bryce's mother, Shonda Bryce, sued Pioneer Energy in Bexar County. She alleged that Pioneer Energy was Lawhorn's employer and that it was vicariously liable for his negligence and directly liable for its own negligence in hiring, training, retaining, and supervising him and entrusting a vehicle to him. Shonda later amended her petition to assert the same vicarious and direct claims against Pioneer Drilling. She also amended her petition to add claims against EOG Resources, Inc.; Stephanie Anders; J&J's Bargain Barn; True Directional Services, LLC; Total Directional Services, LLC; and the administrator of Lawhorn's estate.

On February 16, 2023, Luna—who, as noted above, was already a defendant in the Ector County lawsuit—intervened in Shonda's Bexar County lawsuit and asserted claims against the Pioneer entities. Like Shonda, Luna alleged that Lawhorn was an employee of one or both of the Pioneer entities and that they were vicariously liable for his negligence and directly liable for their own negligence in hiring, training, supervising, and retaining him. Luna later amended his petition to add his wife, real party in interest Kimberly Luna, as an intervenor and to assert claims against all the defendants named in Shonda's then-live petition.

On May 5, 2023, the Ector County plaintiffs amended their petition to add the Pioneer entities and EOG Resources as defendants in that lawsuit. The Ector County plaintiffs alleged that one or both of the Pioneer entities were vicariously liable for Lawhorn's negligence and directly liable for their own negligence in hiring, training, retaining, and supervising Lawhorn and entrusting a vehicle to him. It is undisputed that the Pioneer entities were not parties to the Ector County lawsuit until May 5, 2023. Again, however, Pioneer Energy was a party to the Bexar County lawsuit when Shonda filed her original petition in October of 2022; Pioneer Drilling had been a party to the Bexar County lawsuit since February 14, 2023.

On June 2, 2023, the Pioneer entities moved to abate the Bexar County lawsuit, arguing the Ector County district court had acquired dominant jurisdiction over claims arising out of the May 2021 collision. In her response to the motion, Shonda argued the Pioneer entities were judicially estopped from asserting a dominant jurisdiction claim or had waived that claim because they had previously moved to transfer venue of the Bexar County lawsuit to Midland County. She also argued, however, that the Bexar County litigation should be consolidated with the Ector County case. In their response, the Lunas argued: (1) the Ector County case was not the first-filed case against the Pioneer entities; (2) the Pioneer entities should have sought an abatement on dominant jurisdiction grounds when Pioneer Energy filed its original answer in Bexar County in 2022; and (3) the Pioneer entities engaged in a significant amount of litigation activity in Bexar County. Like Shonda, the Lunas alternatively argued the Bexar County litigation should be consolidated with the Ector County case. In July of 2023, the trial court held a hearing on the Pioneer entities' plea in abatement, but it did not make an oral ruling or sign a written order on the motion at that time.

On August 14, 2023, True Directional filed a First Amended Motion to Transfer Venue contending that Shonda's Bexar County claims should be transferred to Ector County. True

Directional argued: (1) the Pioneer entities had established that Bexar County was not a proper venue; (2) Ector County had acquired dominant jurisdiction over this dispute; and (3) the case should be transferred to Ector County. On August 30, 2023, Shonda, the Pioneer entities, EOG Resources, J&J's Bargain Barn, and True Directional filed a joint motion to sever Shonda's Bexar County claims and transfer those claims to Ector County. On December 7, 2023, the Honorable Rosie Alvarado signed an agreed order granting True Directional's motion to transfer venue "as to the claims and causes of action brought by Plaintiff Shonda Bryce . . . against all Defendants" in the Bexar County case. The order directed the Bexar County District Clerk "to transfer all of [Shonda's] claims" to Ector County.

Five days later, the Honorable Cynthia Marie Chapa, respondent here, signed an order denying the Pioneer entities' plea in abatement. On January 30, 2024, the Pioneer entities filed this original proceeding challenging Judge Chapa's order.

ANALYSIS

*Standard of Review*

Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion when the relator has no adequate remedy by appeal. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). A trial court abuses its discretion if its ruling is arbitrary, unreasonable, or without regard to guiding rules or principles. *See In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 293–94 (Tex. 2016) (orig. proceeding).

A relator has no adequate remedy by appeal when the denial of mandamus relief would result in an "irreversible waste of judicial and public resources[.]" *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136–37 (Tex. 2004) (quoting *In re Masonite Corp.*, 997 S.W.2d 194, 198 (Tex. 1999) (orig. proceeding)). Because allowing a case to proceed in the wrong court wastes both the parties' and the court's resources, "a relator need only establish a trial court's abuse of discretion

to demonstrate entitlement to mandamus relief with regard to a plea in abatement in a dominant-jurisdiction case." *In re J.B. Hunt*, 492 S.W.3d at 299–300.

### *Applicable Law*

"The general common law rule in Texas is that the court in which suit is first filed acquires dominant jurisdiction to the exclusion of other coordinate courts." *Id.* at 294 (internal quotation marks omitted); *In re Sims*, 88 S.W.3d 297, 302 (Tex. App.—San Antonio 2002, orig. proceeding). "Where two actions involving the same subject matter are brought in different courts having concurrent jurisdiction, the court which first acquires jurisdiction should retain such jurisdiction, undisturbed by the interference of another court, and dispose of the controversy." *In re Sims*, 88 S.W.3d at 303. "This first-filed rule flows from principles of comity, convenience, and the necessity for an orderly procedure in the trial of contested issues." *In re J.B. Hunt*, 492 S.W.3d at 294 (internal quotation marks omitted).

The proper method to assert a claim of dominant jurisdiction is through a plea in abatement in the second-filed suit. *See In re Puig*, 351 S.W.3d 301, 305 (Tex. 2011) (per curiam) (orig. proceeding). If the party asserting dominant jurisdiction establishes that the doctrine applies, the trial court in the second-filed suit has no discretion to deny the plea unless the party resisting abatement establishes an exception to the rule of dominant jurisdiction. *See In re J.B. Hunt*, 492 S.W.3d at 294 (concluding real parties' evidence "[fell] well below the legal standards" to establish exception to dominant jurisdiction); *see also In re Red Dot Bldg. Sys., Inc.*, 504 S.W.3d 320, 322–23 (Tex. 2016) (per curiam) (orig. proceeding); *In re Tex. Christian Univ.*, 571 S.W.3d 384, 389, 391 (Tex. App.—Dallas 2019, orig. proceeding).

***Application***

*Does Dominant Jurisdiction Apply Here?*

Our first task is to determine whether the Ector County and Bexar County lawsuits are inherently interrelated. *See In re J.B. Hunt*, 492 S.W.3d at 292. In both the trial court and this court, the Lunas argued there was no inherent interrelation because Christian Luna "did not have a compulsory counterclaim against any of the parties in the Ector County lawsuit . . . when he filed his Petition in Intervention in Bexar County." The Texas Supreme Court has noted, "In determining whether an inherent interrelationship exists, courts should be *guided* by the rule governing persons to be joined if feasible and the compulsory counterclaim rule." *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 247 (Tex. 1988) (emphasis added), *overruled on other grounds by In re J.B. Hunt*, 492 S.W.3d at 292–93. But the Texas Supreme Court has never held that dominant jurisdiction only applies when the compulsory counterclaim rule is satisfied. *See Encore Enters., Inc. v. Borderplex Realty Tr.*, 583 S.W.3d 713, 723–24 (Tex. App.—El Paso 2019, no pet.) (op. on reh'g). We decline to do so here.

As support for their plea in abatement, the Pioneer entities presented pleadings from both the Ector County lawsuit and the Bexar County lawsuit. They also asked the trial court to take judicial notice of the filings in the Bexar County lawsuit. Those records showed that both lawsuits involved the same subject matter: the May 2021 collision and the question of who, if anyone, was responsible for the collision and any preceding events that caused it. *See id.* at 722 (two suits inherently interrelated because they "focus[ed] on the same transaction"); *In re ExxonMobil Prod. Co.*, 340 S.W.3d 852, 856–57 (Tex. App.—San Antonio 2011, orig. proceeding) (two suits based on damage to the same land inherently interrelated even though claimed damages occurred on different dates); *see also Roman-Perez v. Alvarez*, Nos. 13-19-00044-CV & 13-19-00067-CV,

2020 WL 6789209, at *5 (Tex. App.—Corpus Christi–Edinburg Nov. 19, 2020, pet. denied) (mem. op.) (two lawsuits inherently interrelated because they arose "from the same set of facts").

The Ector County lawsuit was filed more than a year before the Bexar County lawsuit. *See In re J.B. Hunt*, 492 S.W.3d at 294. Nevertheless, the Lunas argued below that dominant jurisdiction does not apply here because the Ector County lawsuit was not the first-filed case *against the Pioneer entities*. This argument is contrary to well-established law. *See In re Volkswagen Clean Diesel Litig.*, 557 S.W.3d 73, 77 (Tex. App.—Austin 2017, orig. proceeding) (reviewing plaintiffs' argument that dominant jurisdiction principles do not apply to their suits, which were the first to name certain defendants, and noting "the supreme court has rejected this argument") (citing *Wyatt*, 760 S.W.2d at 247). "It is not required that the precise issues and all of the parties be included in the first suit before the second suit is filed, provided that the claims in the first suit can be amended to bring in all of the necessary and proper parties and the claims." *In re ExxonMobil*, 340 S.W.3d at 856.

Here, the record shows that a Bexar County district court judge—albeit a different judge than the respondent here—signed an order transferring Shonda's claims against the Pioneer entities and the other Bexar County defendants to Ector County. Because Shonda's claims have been transferred to Ector County, all of the parties involved in the Bexar County litigation—with the sole exception of Kimberly Luna—are now before the Ector County district court. *See id.* Both Kimberly Luna's and Christian Luna's claims against the Pioneer entities are nearly identical to Shonda's, and the Lunas have not argued that the Ector County case cannot be amended to include their claims.[3] To the extent the trial court accepted the Lunas' argument that the Ector County case was not the first-filed lawsuit, it abused its discretion. *See id.* at 856–57.

---

[3] We note that under the Texas Rules of Civil Procedure, Christian Luna could have asserted his causes of action against the Pioneer entities by filing a third-party claim in the Ector County lawsuit in which he was a named defendant

We conclude that the two lawsuits are inherently interrelated as a matter of law and that the Ector County litigation was the first-filed case. *See id.* Consequently, the trial court had no discretion to deny the Pioneer entities' plea in abatement unless the Lunas established an exception to dominant jurisdiction. *See In re J.B. Hunt*, 492 S.W.3d at 294; *Wyatt*, 760 S.W.2d at 248.

*Does an Exception to Dominant Jurisdiction Apply Here?*

The Lunas argued below that the Pioneer entities waived dominant jurisdiction by failing to timely file their plea in abatement. A plea in abatement based on dominant jurisdiction must be timely asserted or it is waived. *See, e.g.*, *Finlan v. Peavy*, 205 S.W.3d 647, 652 (Tex. App.—Waco 2006, no pet.). Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *See In re Amoco Fed. Credit Union*, 506 S.W.3d 178, 185–86 (Tex. App.—Tyler 2016, orig. proceeding) (applying waiver analysis to dominant jurisdiction). "The elements of waiver include the following: (1) existing right, benefit, or advantage; (2) actual or constructive knowledge of its existence; (3) an actual intent to relinquish the right (which can be inferred from the conduct)." *ASI Techs., Inc. v. Johnson Equip. Co.*, 75 S.W.3d 545, 548 (Tex. App.—San Antonio 2002, pet. denied) (internal quotation marks omitted) (discussing waiver generally). Accordingly, to determine whether a party timely asserted the doctrine of dominant jurisdiction, we must consider whether that party's purported delay amounted to the intentional relinquishment of a known right, benefit, or advantage. *Cf. id.* We cannot answer that question without determining when the right, benefit, or advantage of dominant jurisdiction first applied to the party who asserted that doctrine. *Cf. id.*; *see also In re Luby's Cafeterias, Inc.*, 979 S.W.2d 813, 817 (Tex. App.—Houston [14th Dist.] 1998, orig. proceeding) ("Courts may examine the equities of the situation in deciding whether the plea is timely filed.").

---

instead of by intervening in Shonda's separate Bexar County lawsuit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.062(b).

The Lunas claimed the Pioneer entities waived dominant jurisdiction because they "should have sought abatement in 2022 when they filed their answer in this [Bexar County] case." We disagree. As a threshold matter, we note that Pioneer Drilling was not sued in the Bexar County litigation until February of 2023 and was not sued in the Ector County litigation until May of 2023. The Pioneer entities have alleged that they are legally separate, and the Lunas have not argued or presented any evidence to support a conclusion that Pioneer Drilling is bound by Pioneer Energy's actions. *See PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 173 (Tex. 2007) ("Texas law presumes that two separate corporations are distinct entities."). The Lunas' assertion that Pioneer Drilling should have sought abatement in 2022 therefore finds no support in the record.

Furthermore, one of the policy rationales behind dominant jurisdiction is preventing the waste of the parties' and the courts' resources that would be caused by trying interrelated lawsuits in multiple counties. *See Wyatt*, 760 S.W.2d at 246–48; *In re ExxonMobil*, 340 S.W.3d at 857; *see also Lodhi v. Haque*, No. 04-18-00917-CV, 2019 WL 5765787, at *6 n.9 (Tex. App.—San Antonio Nov. 6, 2019, pet. denied) (mem. op.). Between October of 2022 (when Pioneer Energy was first sued in Bexar County) and May of 2023 (when both Pioneer entities were first sued in Ector County), any inefficiencies caused by trying the facts of this dispute in two separate counties would not have affected either of the Pioneer entities' rights. It was not until the Pioneer entities had been sued in both counties that they knew they faced the inconvenience and risk of defending against two virtually identical lawsuits in two separate venues. Moreover, until the Pioneer entities were sued in both Bexar County and Ector County, neither court ran the risk that the two cases might result in conflicting judgments regarding the Pioneer entities' liability.

This record does not support a conclusion that the Pioneer entities intentionally relinquished any right, benefit, or advantage to either themselves or the courts by failing to assert

the primacy of a case to which they were strangers. *See ASI Techs.*, 75 S.W.3d at 548. The Pioneer entities filed their plea in abatement less than one month after they were sued in Ector County—i.e., less than one month after they first knew they had any reason to assert dominant jurisdiction. The Lunas did not argue below that a one-month delay is sufficient to waive a claim of dominant jurisdiction, and we have found no authority to support such a conclusion. Under these circumstances, the trial court would have abused its discretion by concluding the Pioneer entities did not timely assert dominant jurisdiction.

The Lunas also argued below that the Pioneer entities waived Ector County's dominant jurisdiction because they "engaged in a significant amount of litigation in" Bexar County by participating in discovery and filing motions to transfer venue to Midland County. Again, we disagree. We have previously held that a party did not waive the issue of dominant jurisdiction by engaging in discovery. *See In re Sims*, 88 S.W.3d at 305. Similarly, the Fourteenth Court of Appeals has held, "The fact that [relator] participated in discovery was of necessity to defend itself, not a waiver." *See In re Luby's*, 979 S.W.2d at 817–18. The Pioneer entities did not waive the dominant jurisdiction of the Ector County court merely by participating in discovery in the only lawsuit that was pending against them during the relevant time. *Compare In re La.-Pac. Corp.*, 112 S.W.3d 185, 189–90 (Tex. App.—Beaumont 2003, orig. proceeding) (party's actions did not waive dominant jurisdiction because party did not actively pursue parallel litigation), *with Howell v. Mauzy*, 899 S.W.2d 690, 698 (Tex. App.—Austin 1994, writ denied) (party waived dominant jurisdiction because he "chose to pursue actively" the second-filed case).

The Pioneer entities' motions to transfer venue to Midland County also did not establish waiver under these circumstances. Because those motions explicitly argued venue was improper in Bexar County, they did not show that the Pioneer entities were actively pursuing litigation in Bexar County. *Cf. Howell*, 899 S.W.2d at 698. And, for the reasons explained above, the Pioneer

entities had no reason to assert that Ector County had dominant jurisdiction over the claims against them until they had been sued in that county. *See In re Luby's*, 979 S.W.2d at 817. Since the Pioneer entities filed their motions to transfer venue to Midland County before they were sued in Ector County, those motions did not amount to an intentional relinquishment of their right to assert Ector County's dominant jurisdiction. *See In re Amoco Fed. Credit Union*, 506 S.W.3d at 186 (considering procedural posture and relator's party status to determine whether relator waived dominant jurisdiction).

For these reasons, the record does not support the Lunas' waiver argument. Because the Lunas did not assert any other exceptions to the doctrine of dominant jurisdiction, the trial court abused its discretion by denying the Pioneer entities' plea in abatement. *See In re J.B. Hunt*, 492 S.W.3d at 294; *Wyatt*, 760 S.W.2d at 248.

## CONCLUSION

We conditionally grant the Pioneer entities' petition for writ of mandamus.

Beth Watkins, Justice